CP-98-19                                                                 1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | Querella |
|---|---|
| In re:<br><br>    José G. Izquiero Stella | 2001 TSPR 113<br><br>154 DPR ____ |

Número del Caso: CP-98-19

Fecha: 2/agosto/2001

Oficina del Procurador General :
                                Lcda. Yvonne Casanova Pelosi
                                Procuradora General Auxiliar

Abogados de la Parte Querellada:
                                Lcdo. Pedro E. Ortiz Alvarez
                                Lcdo. Luis A. Falto Cruz
                                Lcdo. Juan M. Aponte Castro
                                Lcdo. Alex M. López Pérez

Materia: Conducta Profesional

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José G. Izquierdo Stella                    CP-98-19

PER CURIAM

San Juan, Puerto Rico, a 2 de agosto de 2001.

        La querella disciplinaria que hoy nos ocupa está enmarcada en los mismos hechos que requirieron recientemente el ejercicio de nuestra jurisdicción disciplinaria contra el Lic. Jorge Ortiz Brunet.  Véase, In re: Jorge Ortiz Brunet, 2000 T.S.P.R. 170; 152 D.P.R. ___ (2000).  En esta ocasión la querella está formulada contra el Lic. José Izquierdo Stella, a quien se imputa haber violado los cánones 34 y 38 de Ética Profesional los cuales, respectivamente, prohíben a los abogados ofrecer, sea directamente o a través de intermediarios, servicios profesionales a potenciales clientes e imponen la obligación de

preservar el honor y la dignidad de la profesión legal y evitar hasta la apariencia de conducta impropia.

Conforme al Informe del Comisionado Especial designado para aquilatar la prueba y formular determinaciones de hecho, así como a la luz de la prueba documental que obra en el expediente de la querella, concluimos que el Lic. José Izquierdo Stella incurrió en la conducta antiética imputada.

I

Al igual que en In re: Jorge Ortiz Brunet, supra, el proceso disciplinario contra Izquierdo Stella inició luego de que en 1997, el entonces Presidente del Colegio de Abogados de Puerto Rico, informara a la Oficina del Procurador General de Puerto Rico que su institución había recibido una copia de un extracto de una deposición tomada al Sr. Ferdinand Medina Molina en un proceso civil que se tramitaba en la Corte Federal para el Distrito de Puerto Rico.[1] La referida parte de la deposición contenía expresiones del señor Medina Molina en torno a la forma en que había conocido y, eventualmente, gestionado la contratación del Lic. Jorge Ortiz Brunet. En esa deposición, además, el señor Medina Molina narró, de forma general, que en esa ocasión también conoció a otro abogado interesado en representarlo. Este otro abogado resultó ser el Lic. José Izquierdo Stella.

De la investigación que posteriormente fue realizada surge que el Sr. Ferdinand Medina Molina conoció al licenciado Izquierdo Stella cuando éste se presentó a su casa durante el velorio de su hijo, quien había muerto en un accidente automovilístico. Como narramos en In re: Jorge Ortiz Brunet, supra, la muerte del hijo del señor Medina Molina ocurrió en Arecibo, Puerto Rico, el 31 de enero de 1996, cuando un carruaje que transportaba un poste de madera, de los usados comúnmente para instalar alambrado eléctrico, se desprendió de un camión de la Autoridad de Energía Eléctrica e impactó el automóvil en el que viajaba.

Luego de los trámites relacionados con la presentación de la queja, el Procurador nos rindió un Informe en el cual destaca lo siguiente con relación a la conducta profesional de Izquierdo Stella:

> En cuanto al Lcdo. José Izquierdo Stella, el señor Medina declaró que el abogado se presentó en su hogar la noche del velorio con una corona de flores. Señaló que lo visitó en innumerables ocasiones (más frecuentemente que [...] el licenciado Ortiz Brunet) y que en sus visitas trataba de disuadirlo de que contratara al licenciado Ortiz Brunet. Indicó que inclusive el abogado, como parte de su intento de contratarlo, le regaló un libro titulado "El Poder está dentro de ti". Añadió que, una vez se decidió a contratar al licenciado Ortiz Brunet, el licenciado Izquierdo cesó sus visitas hasta hace unas semanas atrás, cuando lo visitó nuevamente en su hogar para que le firmara un documento exonerándolo de haberle hecho acercamientos no solicitados luego de la muerte de su hijo. Informe del Procurador General, en la pág. 5.

Luego de emitir su informe y de recibir la contestación de Izquierdo Stella y Ortiz Brunet, instruimos al Procurador General a que formulara la presente querella. Al hacerlo, el Procurador General formuló los cargos de forma conjunta contra ambos abogados.[2] Alegó

---

[1] Jason Medina v. Puerto Rico Electric Power Autority y otros, Núm. 96-1327 (JAF).

[2] Los cargos contenidos en la querella expresaban:

que tanto Ortiz Brunet como Izquierdo Stella actuaron impropiamente al intentar ser contratados por el señor Ferdinand Medina Molina para representarlo en la reclamación judicial por daños y perjuicios que pudiera presentar contra la Autoridad de Energía Eléctrica. Más tarde, ordenamos ventilar separadamente ambas querellas y nombramos al Hon. Luis Mojica Sandoz Comisionado Especial en el proceso disciplinario que se tramitaría contra Izquierdo Stella.

En su Informe, el Comisionado Especial formuló, en lo pertinente, las siguientes determinaciones de hecho:

> **El Querellado [José Izquierdo Stella] visitó al Sr. Ferdinand Medina mientras su hijo estaba en capilla. Le comunicó que estaba dispuesto a ser su abogado. El señor Medina le contestó que no estaba en condiciones de hablar, que se mantendría en contacto.**
> **El Querellado envió una corona al entierro y acudió a los velorios.** Le dedicó un libro, "El Poder Dentro de Mí", lo que agradeció.
> En una ocasión el señor Medina advirtió al Querellado que también otro abogado se le había acercado. El querellado no se molestó por ello, siempre fue cordial y respetuoso con el señor Medina quien no tiene contra él ningún tipo de resentimiento.
> Cuando el señor Medina se decidió por contratar a otro abogado el Querellado no se incomodó, sino que le manifestó que aún así estaría siempre a sus órdenes, y no lo visitó más.
> El señor Medina no se sintió molesto por las visitas del Querellado; nunca se quejó a alguien y declaraba en este proceso porque fue citado, no por su voluntad. Nunca fue presionado por el Querellado, ni tiene mala opinión de los abogados por lo ocurrido. Informe del Comisionado Especial, en la pág. 2, (énfasis suplido).

Hoy, luego de recibir dicho Informe y evaluar toda la prueba documental que obra en el expediente, resolvemos.

II

Los Cánones de Ética Profesional constituyen unas normas de conducta que regulan el desempeño de los abogados, tanto en su vida profesional como en otras actividades en las que se desenvuelven. In re: Roldán Figueroa, 106 D.P.R. 4 (1977). Su finalidad es promover un desempeño profesional y personal acorde con los más altos principios de conducta decorosa para beneficio, no sólo de la profesión misma, sino también para beneficio de la ciudadanía y las instituciones de justicia del país.

En el presente caso, como indicamos, se ha imputado a Izquierdo Stella la violación de los cánones 34 y 38. El primero de éstos dispone:

---

Cargo I
Los licenciados Ortiz Brunet e Izquierdo Stella violentaron los principios establecidos por el Canon 34 de Etica Profesional el cual, entre otras cosas, obliga a todo abogado a abstenerse [de] ofrecer[,] ya sea directamente o a través de intermediarios sin ser requerido[,] [...] su consejo o asesoramiento legal a clientes potenciales para iniciar reclamaciones judiciales.

Cargo II
Los licenciados Ortiz Brunet e Izquierdo Estella violentaron los principios establecidos por el Canon 38 de Etica Profesional el cual, entre otras cosas, obligan a todo abogado a preservar

Actúa contrario a los altos postulados de la profesión el abogado que, con propósito de lucro y sin ser requerido para que ofrezca su consejo o asesoramiento legal, aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole. Es también contrario a la sana práctica de la profesión el que un abogado, sin ser requerido, bien lo haga personalmente o a través de personas, investigue o rebusque defectos en títulos u otras posibles fuentes o causas de reclamaciones a los fines de beneficiarse en alguna forma mediante la prestación de sus servicios profesionales.

Empaña la integridad y el prestigio de la profesión y es altamente reprobable el que un abogado, actuando directamente o a través de intermediarios o agentes, haga gestiones para proporcionarse casos o reclamaciones en qu[é] intervenir o para proporcionarlos a otros abogados. Incurre en igual falta el abogado que dé u ofrezca beneficios, favores o compensación de clase alguna a empleados públicos, ajustadores de seguros u otras terceras personas con el fin de ganarse su favor para el referimiento de asuntos que puedan dar base a reclamaciones o casos y, por ende, proporcionarle al abogado aumento en su clientela.

Por tratarse de una conducta desdorosa, tanto con respecto a la profesión legal como con la justicia en general, todo abogado está obligado a informar a los organismos competentes sobre cualquier caso en que se incurra en dicha práctica impropia y reprensible inmediatamente después de tener conocimiento de ello. 4 L.P.R.A. Ap. IX, C. 34.

El Canon 34 de Ética Profesional va dirigido a prohibir la solicitación de clientes de forma personal o a través de intermediarios. Su adopción responde, en parte, a la antipatía que tradicionalmente ha mostrado la profesión hacia la instigación de pleitos judiciales por parte de abogados cuya exclusiva motivación es de índole pecuniaria. También responde a la antipatía que generan actuaciones de abogados encaminadas a gestionar su contratación en momentos en que los clientes potenciales se encuentran en una situación angustiosa o de debilidad emocional. Véase, In re: Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993).

Subyace en su texto la noción de que la contratación de un abogado debe ser realizada por un cliente de forma libre y voluntaria, sin que éste tenga que ser persuadido mediante promesas de éxito o presiones indebidas. Tal contratación debe surgir del genuino convencimiento del cliente de que su reclamación será atendida por el abogado seleccionado de forma diligente.

De los autos del caso surge que el licenciado Izquierdo Stella acudió al velorio del hijo del señor Medina Molina con el claro interés de obtener la representación legal de los familiares de la víctima en una potencial reclamación judicial contra la Autoridad de Energía Eléctrica y el Gobierno de Puerto Rico. Ello se desprende de las determinaciones del Comisionado Especial, las cuales están avaladas cabalmente por la prueba documental que obra en el expediente. Al respecto, destacamos lo siguiente.

Primero, la prueba no revela que Medina Molina haya solicitado la presencia de Izquierdo Stella. Todo lo contrario. La prueba razonablemente nos lleva a la conclusión de que Izquierdo Stella acudió a la casa de Medina Molina la noche del velorio bajo su propia iniciativa.

---

el honor y dignidad de la profesión legal y a evitar hasta la apariencia de conducta impropia.

Segundo, esa misma prueba nos mueve a concluir que la razón de la visita de Izquierdo Stella era su interés en ser contratado como abogado en la potencial acción judicial que pudieran instar los familiares de la víctima. Al respecto, en el testimonio estipulado que el propio querellado sometió al Comisionado Especial se destaca que Izquierdo Stella "[se] enter[ó] [de] que el Sr. Ferdinand Medina Molina podría estar interesado en contratar a un abogado en el caso de la naturaleza que le afectaba". Añade que por ello fue "a visitarlo con el mejor ánimo de ayudarle en un proceso difícil".[3] Esta estipulación del querellado, junto a la determinación del Comisionado Especial en el sentido de que Izquierdo Stella "[l]e comunicó [a Medina Molina] que estaba dispuesto a ser su abogado", hacen forzoso llegar a la referida conclusión, más aún ante el hecho de que no hay evidencia alguna que indique que entre Izquierdo Stella y Medina Molina existiera una relación profesional o personal previa.

Tercero, el momento en que ocurrió la visita y ofrecimiento de servicios profesionales por parte de Izquierdo Stella levanta, por sí solo, serias sospechas sobre la naturaleza de su visita. Esa primera visita ocurrió durante el velorio del hijo de Medina Molina, ocasión en la cual le expresó que estaba "dispuesto a ser su abogado".

Cuarto, el Procurador General en su informe destaca, sin ser contradicho por alguna otra prueba, que Izquierdo Stella visitó la residencia de Medina Molina con frecuencia y que en estas visitas "trataba de disuadirlo de que contratara al licenciado Ortiz Brunet".

Quinto, sus visitas cesaron cuando Medina Molina le comunicó que había decidido contratar los servicios profesionales del licenciado Ortiz Brunet, lo que es claramente indicativo de que el único interés que motivaba sus visitas era su deseo personal de lograr la representación profesional de los familiares de las víctimas.

Ante estos hechos, no podemos sino concluir que nos encontramos ante un lamentable caso de solicitación personal vedada por el Canon 34 de Ética Profesional.

III

El Canon 38 de Ética Profesional, por su parte, dispone, en lo pertinente:

El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar **hasta la apariencia de conducta profesional impropia.** [...]. 4 L.P.R.A. Ap. IX, C. 38 (énfasis suplido).

---

[3] La estipulación completa de Izquierdo Stella expresaba lo siguiente:

Me enteré que el Sr. Ferdinand Medina Molina podría estar interesado en contratar a un abogado en el caso de la naturaleza que le afectaba. Fui a visitarlo con el mejor ánimo de ayudarle en un proceso difícil. Nunca lo presioné y traté de orientarle en todas las fases de su crisis. Rápidamente me comunicó que estaba considerando a otro abogado para el caso al igual que a mí. Desarrollamos una buena relación personal. Cuando me dijo que había escogido al otro abogado, también me indicó que contaría conmigo siempre como amigo y que en otra ocasión esperaba que fuera su abogado. Moción para Someter Testimonio Estipulado y Deposición del Sr. Ferdinand, Anejo I.

Es responsabilidad de los abogados examinar con rigor y prudencia los escenarios en los que pudieran desenvolverse, de forma tal que eviten incurrir o aparentar que incurren en conducta éticamente censurable y nociva a la dignidad y honor de la profesión. En el contexto de la solicitación personal, hemos concluido que lesiona el honor y dignidad de la profesión aquel abogado que se aprovecha de la vulnerabilidad y debilidad emocional de una persona para abordarlo con la intención de lograr representarlo en un potencial pleito judicial. En específico hemos señalado que,

> "la inmediatez de la presencia de los abogados, con o sin el consentimiento del cliente potencial, en momentos de indudable angustia de los familiares de una víctima, siembra serias dudas sobre la conducta profesional de los miembros de la profesión. Este proceder es claramente lesivo al buen nombre de la profesión y al suyo propio como profesional." In re: Jorge Ortiz Brunet, supra.

Con relación a la imputada violación al Canon 38 de Etica Profesional, una vez más, la prueba que tenemos ante nuestra consideración es contraria al licenciado Izquierdo Stella.

Sus visitas al señor Medina Molina se iniciaron luego del accidente que causó la muerte al joven Medina, en momentos de clara angustia familiar. Sus constantes visitas a Medina Molina quien incluso expresó a Izquierdo Stella "que no estaba en condiciones de hablar, que se mantendría en contacto", sugieren intenciones altamente cuestionables, lo que no sólo perjudica la reputación del propio Izquierdo Stella, sino también, de toda la profesión.

Más significativo nos resulta el hecho de que conforme a los autos, tan pronto el licenciado Ortiz Brunet fue contratado por el señor Medina, éste optó por informar a Izquierdo Stella sobre esa decisión. A nuestro juicio, tal proceder, a la luz de la totalidad de los hechos, revela una atmósfera de presión indebida por parte de Izquierdo Stella hacia Medina Molina y su familia que lesiona el honor de la profesión y promueve una imagen distorsionada y censurable de la abogacía. Véase, In re: Valentín González, 115 D.P.R. 68 (1984).

Estamos, por lo tanto, compelidos a ejercer nuestra jurisdicción disciplinaria y a sancionar la conducta del licenciado Izquierdo Stella.

A tenor con nuestros pronunciamientos, y tomando en consideración todas las circunstancias del presente caso, en especial que la conducta del querellado no parece haber perjudicado a terceros y el hecho de que el señor Medina Molina afirmó no sentirse incómodo con las visitas del licenciado Izquierdo Stella, Informe del Comisionado Especial, en la pág. 2, limitaremos nuestra sanción a **censurarlo severamente y a apercibirlo de que en lo sucesivo obre con mayor cautela, cumpliendo cabalmente con lo dispuesto en los cánones de Ética Profesional.**

Se emitirá la correspondiente Sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José G. Izquierdo Stella

CP-98-19

SENTENCIA

San Juan, Puerto Rico, a 2 de agosto de 2001.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente Sentencia, se censura severamente al Lic. José G. Izquierdo Stella por haber violado los Cánones 34 y 38 de Ética Profesional. Se le apercibe que en lo sucesivo deberá obrar con mayor cautela, y cumplir a cabalidad con lo dispuesto en los Cánones de Ética Profesional.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García, inhibido. La Juez Asociada señora Naviera de Rodón no interviene. El Juez Asociado señor Fuster Berlingeri no intervino.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo