EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Carlos Hernández Pérez | 2006 TSPR 174 169 DPR ____ |

Número del Caso: CP-2003-5

Fecha: 25 de septiembre de 2006

Abogados de la Parte Querellada:

Lcdo. Lcdo. José S. Brenes-La Roche
Lcdo. Felipe Benicio Sánchez

Oficina del Procurador General:

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Materia: Conducta Profesional
(La suspensión del abogado advino final y firme el día 27 de noviembre de 2006.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In Re*:

Carlos Hernández Pérez          CP-2003-05          *Certiorari*

*PER CURIAM*

En San Juan, Puerto Rico, a 25 de septiembre de 2006.

La queja que da origen a este procedimiento disciplinario fue presentada el 30 de abril de 2001 por la Sra. Claribel Colón Rosario. Ordenada la investigación correspondiente al Procurador General, éste sometió un informe inicial recomendando el archivo de la queja. Ante la información suplida por la quejosa en su réplica, ordenamos al Procurador General ampliar su informe original.

En cumplimiento de nuestra orden, el Procurador presentó un Informe Enmendado el 21 de marzo de 2002. Concluyó que según su investigación el Lcdo. Carlos Hernández Pérez podía haber incurrido en posibles violaciones a los Cánones 18, 19 y 34 de

Ética Profesional, 4 L.P.A. IX. Tras varias prórrogas, la representación legal del licenciado Hernández Pérez, presentó su escrito de réplica el 3 de octubre de 2002.

El 13 de diciembre de 2002, ordenamos la presentación de la querella, lo cual se hizo el 3 de marzo de 2003. Los cargos formulados por el Procurador General en la querella son los siguientes:

*PRIMER CARGO*

El licenciado Hernández Pérez violentó los principios establecidos en el Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C.18, al no defender los intereses de sus clientes en forma adecuada y con la debida diligencia, culminando dicha actuación en la pérdida de la causa de acción de daños y perjuicios ante el Tribunal de Primera Instancia.

*SEGUNDO CARGO*

El licenciado Hernández Pérez violentó los principios enunciados en el Canon 19 de los Ética Profesional, 4 L.P.R.A. Ap. IX C.19, al no mantener informado a sus clientes del desarrollo del caso que se le había encomendado.

*TERCER CARGO*

El licenciado Hernández Pérez violentó los principios establecidos en el Canon 34 de los de Ética Profesional, 4 L.P.R.A. AP IX C.34, al ofrecer sus servicios profesionales sin haber sido requeridos los mismos por la Sra. Claribel Colón Rosario y el Sr. Luis Antonio González Pérez.

El 18 de agosto de 2003, el querellado replicó a la querella del Procurador General. Negó haber violado los cánones de Ética Profesional, aunque admitió que su conducta podría implicar negligencia profesional y

aseguró estar dispuesto a compensar a la quejosa, de haber sufrido ésta algún daño, una vez el foro pertinente determinase el grado y extensión del mismo. Adujo, además, que siempre mantuvo informada a su cliente de los asuntos relacionados con su caso y que a petición de ésta le entregaba dinero para sufragar el costo de las visitas y tratamiento médico, así como comprar alimentos para su hija de crianza y bebé recién nacido. En cuanto al tercer cargo formulado por el Procurador, el licenciado Hernández Pérez informó que acudió a casa de la quejosa porque a requerimiento de ésta una vecina de ella le pidió que la visitara. Tras dialogar con la quejosa, ésta lo autorizó a representarla legalmente sin que él la hubiera instigado a ello.

Una vez nombrada la Lcda. Igry Rivera de Martínez como Comisionada Especial, el 10 de febrero de 2004 se celebró una vista con la comparecencia de las partes para determinar el estado del procedimiento disciplinario y pautar el trámite del caso. Según surge del Informe de la Comisionada, en esa ocasión el querellado reafirmó su interés en compensar a la quejosa, aunque señaló la dificultad de poder llegar a acuerdos ante el hecho de que ella no tenía abogado que la representara para tales propósitos. Las partes acordaron una reunión entre abogados para el 26 de marzo de 2004, con el objetivo de estipular todo lo que fuese posible y suscribir un Informe de Conferencia con Antelación a la Vista en sus

méritos de manera conjunta. No obstante, no lograron llegar a acuerdos ni someter el referido informe.

II

La vista en los méritos se celebró el 10 de marzo de 2005. En representación del querellado comparecieron los licenciados José S. Brenes La Roche y Felipe Benicio Sánchez. En representación del Procurador General compareció la Lcda. Minnie H. Rodríguez. A continuación resumimos los testimonios presentados ese día, según surgen de la transcripción de la prueba oral.

El primer testigo en declarar fue el Sr. Luis Colón Velázquez. Éste expresó, en síntesis, que era vendedor de autos y que conocía a la señora Colón Rosario. Ella y su esposo le compraron un auto hacía seis o siete años y le explicaron que le iban a pagar con el dinero producto de una demanda que habían presentado como resultado de un accidente. Indicó el testigo que antes de entregarles el auto su abogado habló con el querellado Hernández Pérez. La llamada la hizo el abogado en presencia del testigo; querían saber si el dinero se recibiría en dos meses más o menos. Luego de conversar con el licenciado Hernández determinaron que se podía vender el auto a la señora Colón Rosario y su esposo y procedieron a hacer el pagaré por $12,000. La señora Colón Rosario salió del *"dealer"* con el vehículo, una guagua Chevrolet Lumina del año 1993, color rojo oscuro. Transcurrido algún tiempo y como no se le pagó según acordado, el señor Colón Velázquez

demandó a la señora Colón Rosario para tratar de cobrar su deuda, recayendo sentencia a su favor en el Tribunal de Primera Instancia, Subsección de San Sebastián, en el caso Núm. AICI200100628. El testigo aseguró que trató de comunicarse con el querellado durante el proceso, sin éxito alguno. Nunca lo consiguió en su oficina porque alegadamente siempre estaba en el tribunal. Durante el contrainterrogatorio el testigo afirmó que el querellado le decía que le pagaría, aunque nunca lo hizo.

La segunda persona en declarar fue la quejosa, Claribel Colón Rosario. Expresó básicamente que era ama de casa, que estudió solo hasta el cuarto grado de Escuela Elemental, que residía en Isabela y que conoció al licenciado Hernández Pérez en su hogar, cuando éste "apareció" en su casa a ofrecerle sus servicios como abogado, luego del accidente de automóvil en el que sufrieron lesiones físicas ella y una menor que era su hija de crianza. Declaró que aún convalecía y tomaba medicamentos. Cuando el querellado fue a su hogar estaban presentes su exesposo, Luis A. González, su hermana, Sandra Colón y sus hijas. Relató la señora Colón Rosario que cuando el querellado vino a su hogar y conversaron sobre lo ocurrido, él le dijo que llevaba muchos casos de esa naturaleza y que le aseguraba ganar la demanda y por eso le dejó el caso a él.

La señora Colón Rosario también expuso que cuando necesitaba algo del abogado él la ayudaba y le daba

dinero para pagar la renta, para comer y otras necesidades. Ella iba a menudo a la oficina y el querellado le decía que el caso iba muy bien, que no se preocupara. Añadió que el licenciado Hernández Pérez la refirió a un médico, pero éste dejó de atenderla porque el licenciado no le pagaba. Luego fue a un psicólogo, cuyo nombre no pudo recordar. Todo su tratamiento lo recibió en un hospital público durante varios años. También fue a un oculista referida por el querellado y a un cirujano.

Respecto a la guagua Chevrolet Lumina indicó que al enterarse por el requerimiento de pago del señor Colón Velázquez que no se estaba pagando la guagua, acudió al querellado y le cuestionó sobre lo que estaba ocurriendo. Éste le expresó que "el caso se cayó" y le advirtió que debía quedarse callada porque si no, tendría que pagar la guagua. Antes de ese momento desconocía que esa era la realidad del caso. Dadas las circunstancias procedió a radicar una demanda contra el querellado, (Civil Núm. ADP20020094) en el Tribunal de Primera Instancia, Sala Superior de Aguadilla.[1]

A preguntas del abogado del querellado durante el contrainterrogatorio, la testigo indicó que conocía al señor Aracelio Aldarondo, a quien le decían "Santa Claus", y que éste fue con el querellado a su casa

---

[1] Ésta se archivó, con perjuicio, el 9 de septiembre de 2003.

después del accidente. Conoció a "Santa Claus" junto con el querellado; llegaron los dos juntos. Aceptó que no tenía licencia de conducir y que por ello no pudo recibir tratamiento a través de la Administración de Compensaciones por Accidentes de Automóvil (ACAA). Le dieron tratamiento a su hija. Indicó, además, que nunca antes había ido a un médico a tratarse y que el querellado le ayudaba después del accidente, dándole dinero. A preguntas del abogado del querellado sobre si la cantidad de dinero que éste le había dado ascendía a $6,000, ésta indicó que el abogado la ayudó "bastante" y que fue "más o menos" esa suma. Aceptó que el querellado le pagaba a los médicos porque ella no tenía dinero, aunque la dejaron de atender luego, cuando él dejó de pagar.

El tercer testigo en declarar fue el señor Luis Antonio González Pérez, quien convivió con la señora Colón Rosario, según explicó. Luego de exponer lo relativo al accidente, indicó que ya había transacciones en proceso con el seguro de la Loomis Fargo cuando se apareció en su casa el querellado con otro señor a ofrecerle sus servicios. No conocía al querellado y se dejó llevar por lo que éste les dijo. Expresó que el querellado tomó fotos del vehículo y de la señora Colón Rosario, y les dejó dinero.

A preguntas de la Procuradora Auxiliar aseguró que durante las conversaciones con la compañía de seguros de

Loomis Fargo se le había ofrecido la suma de $80,000. Manifestó que, cuando fueron a la oficina del abogado querellado éste les aseguró que "lo menos que le iba a sacar eran $250,000 en el caso". Los orientó para que hablaran con el "*dealer*" para obtener el vehículo, "que él lo garantizaría". Ante ello, él procedió a dialogar con el señor Luis Colón, éste se comunicó con su abogado y éste último, a su vez, con el querellado, "quien les dio la autorización para que les dieran el vehículo". Después de esa conversación, se lo entregaron.

Explicó que iba cada mes a la oficina del querellado a conocer el estado del caso y siempre le decía que estaba todo bien. Luego se separó de la señora Colón Rosario y cuando volvió a la oficina el querellado le dijo que había presentado una nueva demanda sin él. El testigo le dijo que eso no podía ser y el abogado le contestó que eso era una decisión suya. Según el señor González Pérez, nunca se le consultó ni se le dio información a tales efectos antes de ese momento.

Durante el contrainterrogatorio, el testigo González Pérez se reafirmó en que durante los primeros días del accidente lo visitó un ajustador y se valoraron los daños en $80,000. No recordó el nombre del ajustador ni el de la compañía de seguros porque supuestamente la persona se presentó como representando a la Loomis Fargo. Tomó fotos estando allí.

Con estos tres testigos concluyó la prueba del Procurador General. El querellado entonces procedió a declarar.

A preguntas de su abogado el licenciado Hernández Pérez expresó que lleva alrededor de 30 años en la profesión legal, que ejerce la misma en el pueblo de Aguadilla y que conoció a la quejosa a través de un señor que respondía al apellido Aldarondo y a quien llamaban "Santa Claus". Relató que esta persona lo visitó y le dijo que una vecina suya se había visto envuelta en un accidente automovilístico y se encontraba convaleciendo en su hogar. Que dicha vecina le había pedido que le buscara un abogado. El querellado le preguntó por qué no venía la señora a su oficina y el señor Aldarondo le explicó que el accidente había sido con un camión y estaba "toda chavada". Ante ello, acompañó al señor Aldarondo a la casa de su vecina y allí conoció a la señora Colón Rosario.

Expuso, además, que conoció al esposo de la señora Colón Rosario; que ambos le explicaron cómo fue el accidente y el hecho de que ACAA no le daba tratamiento a la señora Colón Rosario porque ésta no tenía licencia de conducir. Ante el cuadro que vio y en consideración a que ella le dijo que necesitaba dinero, él le adelantó $1,000. Que así continuó prestándole dinero hasta que la cuenta llegó a $6,000.

Durante el contrainterrogatorio, a preguntas de la Procuradora Auxiliar, aseguró que el hombre a quien conocen como "Santa Claus" no le había llevado otros casos, aunque lo conocía porque era el padre de un amigo suyo.

Terminada la prueba, a petición de los abogados del querellado se ordenó la transcripción de la vista y la Comisionada concedió un término de 20 días, a partir de la entrega de la transcripción, que transcurriría simultáneamente para ambas partes, para que éstas sometieran memorandos de derecho. La transcripción se envió a las partes, con la correspondiente certificación, el 19 de septiembre de 2005.

El procurador General presentó su Memorando de Derecho el 11 de octubre de 2005, dentro del término concedido. No así el querellado. Transcurrido en exceso el término concedido el querellado solicitó prórroga, aduciendo que uno de sus abogados se encontraba fuera de Puerto Rico. La Comisionada declaró sin lugar la solicitud de prórroga, así como una moción posterior solicitando reconsideración de esa determinación. A pesar de ello, el 8 de noviembre de 2005 el querellado presentó un memorando de derecho. La Comisionada ordenó su devolución acorde a lo que había resuelto anteriormente.

En su informe, la Comisionada concluye que la prueba "no arroja dudas de que la querella tiene méritos suficientes y quedó debidamente probada, sosteniéndose

plenamente las violaciones éticas imputadas al licenciado Hernández Pérez". Concluyó específicamente que la versión del querellado "de que la quejosa lo mandó a buscar porque estaba 'chavada' no nos mereció credibilidad". En cuanto a la obligación de mantener informados a sus clientes expresamente concluye:

> De la prueba podemos concluir inequívocamente que el querellado faltó a este deber. No mantuvo informada a la quejosa y tampoco a su compañero consensual, quien se enteró accidentalmente de que había sido excluido del caso en la segunda demanda. Nunca discutió, consultó o informó sus decisiones a los clientes. Su negligencia, al igual que su falta de información hacia sus clientes, provocó incluso que éstos fueran demandados por no pagar el vehículo Lumina y recayera una sentencia en su contra. No hay que olvidar que se trata de personas con pobre escolaridad que requerían un mayor esfuerzo en el detalle de la información.

En cuanto a la insistencia del querellado de que su conducta podía catalogarse de negligente pero no antiética, expresa la Comisionada:

> No existe la menor duda de que la actuación del querellado no fue diligente, ni adecuada, ni responsable. La demanda de daños y perjuicios presentada fue finalmente desestimada a causa de su pobre diligencia consistente en errores crasos, tales como, no atender el trámite, no contestar planteamientos fundamentales y dejar que el caso fuera desestimado sin realizar esfuerzo alguno. Mientras tanto le informaba a sus clientes que todo estaba marchando bien, faltando así la verdad.

El escrito de Réplica al Informe de la Comisionada Especial presentado por el querellado no controvierte la prueba en sus aspectos medulares. Más bien hace énfasis

en su apreciación de que los daños sufridos por la quejosa en el accidente fueron menores, y que ésta se aprovechó de la generosidad del querellado para adquirir un auto y dinero para sufragar sus gastos pues para eso usó el dinero que el licenciado le daba para su tratamiento médico. Aduce que la motivación de la quejosa es el hostigamiento y cuestiona la veracidad de su testimonio en cuanto a que no conocía al señor Aldarondo ("Santa Claus") antes de que éste trajera al licenciado Hernández Pérez a su casa.

De igual forma cuestiona la veracidad del testimonio del excompañero consensual de la quejosa, basado en la credibilidad que puede merecer su alegación de que a pocos días del accidente un ajustador de seguros le había ofrecido $80,000 en transacción.

Por último, plantea la consideración que merecen las muestras de arrepentimiento y bochorno del querellado ante su admitida negligencia en diligenciar los emplazamientos, así como su trayectoria profesional de 33 años.

Analizada cuidadosamente la prueba presentada, el expediente, y los escritos de las partes, pasamos a resolver.

### III

Luego de examinar detenidamente el expediente de este caso, entendemos que el licenciado Carlos Hernández

Pérez ha violado los cánones 18, 19, 23 y 34 de Ética Profesional.

Los Cánones de Ética Profesional tienen como objetivo el promover que los abogados se desempeñen en el aspecto profesional y personal acorde con los más altos principios de conducta decorosa, para el beneficio de la profesión, la ciudadanía y las instituciones de justicia del país. In re Izquierdo Stella, 154 D.P.R. 732 (2001). Dentro de estas normas básicas que deben seguir los abogados se encuentran reguladas sus relaciones con los clientes. Por ejemplo, el Canon 18, 4 L.P.R.A. Ap. IX C. 18 (1999), entre otras cosas, impone al abogado el deber de defender los intereses de su cliente de manera diligente; imponiéndole actuar "en aquella forma que la profesión jurídica en general estima adecuada y responsable".[2] En su labor como representante legal, el abogado debe observar un trato profesional que se caracterice por el uso de su mayor capacidad al aplicar sus conocimientos, su experiencia y su habilidad en el campo jurídico. Además, debe exhibir la más devota lealtad y la más completa honradez. In re Acosta Grubb,

_____

[2] El Canon 18 de competencia del abogado y consejo al cliente dispone en lo pertinente que:
. . .
   Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.
. . .
4 L.P.R.A. Ap. IX C. 18 (1999).

119 D.P.R. 595 (1987). Si el abogado no cumple con estas normas puede ser suspendido de la profesión.

En el pasado hemos suspendido de la profesión a abogados, por haber asumido la representación legal de una persona y no hacerlo de modo diligente causando que sus clientes perdieran sus causas de acción. *Véase* In re Ortiz Velázquez, 145 D.P.R. 308 (1998); In re Arroyo Rivera, 148 D.P.R. 354 (1999). Por otro lado, hemos dejado claro que esta responsabilidad del abogado con su cliente no cesa porque su cliente no cumpla con lo pactado por honorarios. Si el abogado no quiere seguir representando a su cliente por razones económicas debe renunciar a su representación y esperar que el tribunal lo acepte. Mientras tanto, el abogado debe seguir siendo diligente en la tramitación del caso. In re Acosta Grubb, *supra*; In re Cruz Tollinche, 112 D.P.R. 699 (1982).

No tenemos la menor duda de que la actuación del querellado en este caso no fue diligente, ni adecuada, ni responsable. La demanda de daños y perjuicios presentada por él en representación de la quejosa fue finalmente desestimada a causa de su falta de diligencia, consistente en errores crasos, al no atender al trámite procesal del caso, no contestar planteamientos fundamentales y permitir que el caso fuera desestimado sin realizar esfuerzo alguno. De acuerdo a nuestros precedentes, por lo tanto, el licenciado Hernández Pérez violó el Canon 18 de Ética Profesional, *supra*.

Además de ser diligente, el abogado en su relación con su representado debe mantenerlo informado de las incidencias del caso. El Canon 19, 4 L.P.R.A. Ap. IX C. 19 (1999), requiere, entre otras cosas, que el abogado mantenga siempre a su cliente informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.[3] En ocasiones hemos incluido dentro del deber de diligencia el deber de mantener informado a los clientes. *Véase* In re Cardona Vázquez, 108 D.P.R. 6 (1978). No obstante, lo cierto es que el Canon 19, *supra*, establece este deber de los abogados independientemente del deber de diligencia.

Este deber comprende el mantener informado al cliente de las gestiones realizadas y del desarrollo de éstas, el consultar las cuestiones que no estén dentro ámbito discrecional de la representación legal, y cumplir con las instrucciones de los representados. In re Acosta Grubb, *supra*. Hemos establecido que se viola este canon cuando no se atienden los reclamos de información del cliente, no se le informa del resultado adverso de la gestión encargada, la acción se desestima o se archiva, no se mantiene al cliente al tanto del estado o la

---

[3] El Canon 19 de información al cliente dispone en cuanto a la responsabilidad de informar del abogado en lo particular lo siguiente:

> El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.
> . . .

4 L.P.R.A. Ap. IX C. 18 (1999).

situación procesal del caso, o simplemente se niega al cliente información del caso. *Véase* In re Vélez Valentín, 124 D.P.R. 403 (1989); Colón Prieto v. Géigel, 115 D.P.R. 755 (1984); In re Acevedo Álvarez, 143 D.P.R. 293 (1995). El Canon 19 obliga a los abogados también a consultar con el cliente sus dudas sobre cómo llevar el caso, en cuestiones que no sean de su discreción. In re Acosta Grubb, *supra*.

De la prueba podemos concluir inequívocamente que el querellado faltó a este deber. No mantuvo informada a la quejosa y tampoco a su compañero consensual, ambos demandantes, sobre el curso de la demanda original y su desestimación. Por el contrario, el señor González se enteró accidentalmente de que se le había excluido del caso en la segunda demanda. El querellado nunca discutió, consultó o informó sus decisiones a los clientes. Entre éstas, decisiones que estaban fuera del marco discrecional de la representación legal. Su negligencia, al igual que la omisión de brindar información a sus clientes, provocó incluso que éstos fueran demandados por no pagar el vehículo Lumina y que recayera una sentencia en su contra. Por otra parte, no podemos olvidar que en este caso se trataba de personas de pobre escolaridad lo cual requería del querellado un esfuerzo mayor para transmitirles la información necesaria, de modo que cumpliera cabalmente con su obligación bajo el Canon 19,

*supra*. Por tanto, el licenciado Hernández Pérez violó también este canon.

Otro aspecto importante en las relaciones entre el abogado y sus clientes es que el primero no puede adquirir interés o participación sobre el asunto por el cual ha sido contratado. Esta prohibición se encuentra contenida en el canon 23, 4 L.P.R.A. Ap. IX C. 23 (1999). La modalidad más común de este asunto, y la que en la mayoría de los casos que hemos estudiado este canon hemos tratado, es cuando un abogado adquiere bienes que son parte del litigio para el cual fue contratado. *Véase* In re Sánchez Ferrari, 115 D.P.R. 40 (1984). Sin embargo, un abogado puede violar este canon al ayudar financieramente a su cliente.[4]

Los abogados no pueden proveer dinero a sus clientes para gastos médicos o como adelanto de lo que recibirán de prevalecer en el caso. Sí pueden cubrir las costas del pleito y los peritos o exámenes que sean necesarios para poder presentar la causa de acción. Esta norma intenta evitar que un abogado pueda utilizar su poder económico para hacerse allegar clientes y promueve que en última

---

[4] El Canon 23 específicamente establece que:
. . .
  Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.
. . .
4 L.P.R.A. Ap. IX C. 23 (1999).

instancia éste no tenga ningún interés personal en el pleito, y así pueda representar adecuadamente a sus clientes. El licenciado Hernández Pérez admitió que le adelantó dinero a la señora Colón Rosario. Ninguno de los adelantos fue con alguno de los propósitos permitidos por el canon 23, *supra*, por lo que el licenciado Hernández Pérez violó también este canon.

Vinculado a esta prohibición de que los abogados se conviertan en benefactores de sus clientes para allegarse clientes se encuentra la prohibición sobre la gestión de pleitos contenida en el Canon 34 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 34 (1999).[5] Entre otras cosas, este canon dispone que es contrario "a los altos postulados de la profesión de abogado", que un abogado con intención de lucrarse u obtener un beneficio y sin ser requerido ofrezca asesoría legal, aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole. El

---

[5] El Canon 34 provee en lo pertinente que:

Actúa contrario a los altos postulados de la profesión el abogado que, con propósito de lucro y sin ser requerido para que ofrezca su consejo o asesoramiento legal, aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole. Es también contrario a la sana práctica de la profesión el que un abogado, sin ser requerido, bien lo haga personalmente o a través de personas, investigue o rebusque defectos en títulos u otras posibles fuentes o causas de reclamaciones a los fines de beneficiarse en alguna forma mediante la prestación de sus servicios profesionales.

. . .

4 L.P.R.A. Ap. IX C. 34 (1999).

objetivo de esta disposición es que la contratación de un abogado se realice de forma libre y voluntaria, sin que los clientes sean persuadidos con promesas de éxito o presiones indebidas sino por el genuino convencimiento de que su reclamación será atendida por el abogado seleccionado de forma diligente. In re Izquierdo Stella, *supra*.

La prueba demuestra que el querellado visitó por su cuenta, sin ser requerido, la residencia de la quejosa, junto al señor Aldarondo. La quejosa y su pareja no conocían al querellado ni al señor Aldarondo y no habían requerido su presencia. Una vez conoció a la familia en la residencia, el querellado les habló de su vasta experiencia profesional y les ofreció sus servicios. Culminó su visita entregando $1,000 a la familia, y les advirtió que no llegaran a ningún arreglo con la compañía de seguros, que él manejaría el caso y le sacaría $250,000. La versión del querellado de que la quejosa lo mandó a buscar porque estaba "chavada" no le mereció credibilidad a la Comisionada. Nada en el testimonio y escritos del querellante, nos mueve a concluir lo contrario. Con estos hechos en cuenta, es evidente que el licenciado Hernández Pérez violó los mandatos del Canon 34, *supra*, y que su contratación no fue libre de presiones indebidas ni obedeció al convencimiento de la señora Colón Rosario y del señor González Pérez sobre

que el licenciado Hernández Pérez brindaría una representación adecuada y diligente.

De esa forma, la prueba sostiene plenamente las violaciones éticas imputadas al licenciado Hernández Pérez. Considerando como atenuantes sus más de 30 años de práctica profesional sin señalamiento ético alguno y sus expresiones de arrepentimiento y vergüenza por lo sucedido, se ordena su separación temporera de la profesión por el término de un año.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.


                                    Aida Ileana Oquendo Graulau
                                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In Re*:

Carlos Hernández Pérez          CP-2003-05          *Certiorari*


*SENTENCIA*


En San Juan, Puerto Rico, a 25 de septiembre de 2006.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integrante de la presente Sentencia, se ordena la separación temporera de la profesión del Lcdo. Carlos Hernández Pérez, por el término de un año.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo