*In re* MANUEL ACEVEDO HERNÁNDEZ, querellado.

*Números:* AD-2014-1    *Resueltos:* 14 de diciembre de 2015
AD-2014-2

*Cristina Guerra Cáceres*, directora de la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales, *Félix J. Fumero Pugliessi, Rosa María Cruz-Niemiec* y *Eric J. Salas López*, asesores legales de la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales; *Joseph C. Laws del Valle* y *Melanie Matos Cardona*, abogados del querellado; *Ángel F. Rossy García*, comisionado especial, y *Delia Lugo Bougal*, comisionada asociada, en informes; *Aída N. Molinary de la Cruz*, presidenta de la Comisión de Disciplina Judicial, en informe.

PER CURIAM: Hoy nos corresponde adoptar otra acción dirigida a fortalecer la política institucional de cero tolerancia a cualquier conducta que pueda lacerar la confianza de la ciudadanía en su sistema de justicia. Nos enfrentamos a la primera vez en que un juez es procesado criminalmente por ser parte de un esquema para beneficiar a un acusado a cambio de recibir bienes y servicios, aparte de incurrir en acciones adicionales que mancillan la imagen de todo el capital humano de la Rama Judicial.

El juez o la jueza es un funcionario público al servicio de la ciudadanía, no al suyo propio. Su función principal es servir como garante de la administración de la justicia de forma ecuánime y objetiva, guiado siempre por los postulados de la ley, el orden y la moral. Como tal, debe ser independiente y autónomo. Tal oficio requiere de una acción íntegra y libre de avaricia, capaz de anteponer la verdadera Justicia sobre sí mismo.

Desdichadamente, procede destituir a uno de los miembros de la Judicatura por sus actuaciones como magistrado. Los hechos de este caso ejemplifican el tipo de conducta que no representa los valores éticos de los integrantes de nuestra Rama Judicial. Nos encontramos ante el lamentable escenario en que un juez actuó mediando corrupción judicial. Tal realidad requiere que este Tribunal actúe con firmeza salvaguardando el pilar de nuestro sistema de justicia: la confianza depositada en nosotros.

I

Los hechos que originan las querellas presentadas se relacionan con las acciones y la conducta del juez Manuel Acevedo Hernández (juez Acevedo Hernández) vinculados al caso criminal por homicidio negligente, obstrucción a la justicia y conducir en estado de embriaguez que se ventiló contra el Sr. Lutgardo Acevedo López (Acevedo López). El juez Acevedo Hernández emitió las sentencias absolutorias en el referido caso el 27 de marzo de 2013.

A tan sólo nueve días del fallo absolutorio, el 5 de abril de 2013 agentes de la Policía de Puerto Rico intervinieron con un vehículo conducido por un empleado y gestor del señor Acevedo López, el Sr. Ángel Román Badillo (Román Badillo), por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes. El juez Acevedo Hernández se encontraba como pasajero del señor Román Badillo durante la intervención. Así las cosas, el juez Acevedo Hernández se identificó como juez y cuestionó los motivos de la detención del señor Román Badillo. Igualmente, realizó un acercamiento al agente Emanuel Lorenzo Ramírez con el fin de solicitar que el señor Román Badillo no fuera denunciado por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes. Así, insistió en hablar con la persona encargada para canalizar su petición.

Posteriormente, el 14 de abril de 2014, las autoridades federales diligenciaron una orden de allanamiento en la residencia del juez Acevedo Hernández. En esa misma fecha se ordenó el inicio de una investigación disciplinaria en cuanto al diligenciamiento de la orden de allanamiento y se suspendió temporeramente de sus funciones con paga al juez Acevedo Hernández en lo que concluía la investigación de rigor.

Paralelamente, la Directora de la Oficina de Administración de los Tribunales (Directora de la OAT) refirió para investigación lo concerniente al incidente ocurrido el 5 de abril de 2013. Asimismo, la Sra. Lesly Pérez Rodríguez (Pérez Rodríguez) presentó una queja en la que señaló irregularidades relacionadas con el proceso judicial por la muerte de su cónyuge en contra del señor Acevedo López, que fue presidido por el juez Acevedo Hernández. De igual forma, la señora Pérez Rodríguez cuestionó la relación del juez Acevedo Hernández con el imputado de delito.

Ante la gravedad de las imputaciones, se procedió con el proceso disciplinario y la correspondiente notificación al juez Acevedo Hernández, quien contestó las quejas me-

diante misiva de 7 de mayo de 2014. Éste indicó que el expediente del caso criminal reflejaba que el Ministerio Público no probó los cargos imputados contra el señor Acevedo López. En cuanto a los hechos relacionados con el incidente de 5 de abril de 2013, manifestó que desconocía si el señor Román Badillo era agente y empleado del señor Acevedo López. Relató que el señor Román Badillo le ofreció transporte a San Juan, debido a que su vehículo tenía desperfectos. Asimismo, expresó que agentes del orden público le indicaron que permaneciera en el vehículo y que luego de terminado el proceso reanudaron su viaje a Aguadilla.

Durante la investigación del proceso disciplinario, el 28 de mayo de 2014 un Gran Jurado Federal emitió un pliego acusatorio contra el juez Acevedo Hernández, el señor Acevedo López y el señor Román Badillo por los delitos de conspiración y soborno con el fin de lograr un trato favorable o de absolución, o ambas, del señor Acevedo López en un procedimiento judicial presidido por el juez Acevedo Hernández. Ello a cambio de bienes o pagos realizados a su persona. Al día siguiente, el juez Acevedo Hernández fue arrestado.

Como consecuencia de tal suceso, la investigación disciplinaria fue ampliada en coordinación con la Fiscalía Federal. Eventualmente, se presentaron dos informes de investigación fechados el 25 de junio de 2014 y el 11 de septiembre del mismo año.

En el Primer Informe de Investigación se atendió lo relacionado con el incidente del 5 de abril de 2013. En éste se indicó que la prueba recopilada demuestra que el juez Acevedo Hernández hizo un acercamiento indebido al agente Emanuel Lorenzo Ramírez tras la intervención con el señor Román Badillo. Particularmente, al identificarse como juez, al solicitar que el señor Román Badillo no fuera denunciado por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes, e insistir en hablar con la persona a cargo para canalizar su petición. Por lo tanto, se

concluyó que el juez Acevedo Hernández incurrió en conducta impropia y contraria a las normas éticas que rigen la función de un juez. Específicamente, se le imputaron violaciones a los Cánones 1, 23 y 30 de Ética Judicial, 4 LPRA Ap. IV-B, y transgresión al Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

El Segundo Informe de Investigación consideró el arresto del juez Acevedo Hernández por las autoridades federales. En resumen, se señaló que la investigación arrojó que el magistrado conspiró para lograr un trato favorable o la absolución del señor Acevedo López en el asunto criminal ante su sala a cambio de bienes o pagos a su favor. Ante ello, indicó que proceden acciones disciplinarias adicionales por conducta reñida con los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 de los de Ética Judicial, 4 LPRA Ap. IV-B, y los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Tras los trámites de rigor, el 7 de julio de 2014 se emitió una determinación de causa para presentar la querella por las violaciones desglosadas en el Primer Informe de Investigación. De igual forma ocurrió en septiembre de 2014, con relación al Segundo Informe de Investigación. En esta última, y debido a la naturaleza de los cargos y conducta imputada que culminó con el arresto del juez Acevedo Hernández, como medida adicional se recomendó la suspensión del salario del magistrado hasta la disposición final de la querella. Este Tribunal no vaciló en acoger la recomendación, y procedió a ordenar la suspensión inmediata del salario del juez Acevedo Hernández hasta que concluyera el procedimiento disciplinario. Véase *In re Acevedo Hernández*, 191 DPR 663 (2014).[1]

---

[1] Es importante recalcar que, en asuntos que involucran imputaciones de corrupción en el ámbito del ejercicio de la función judicial, es imperativo que este Tribunal ejerza su poder disciplinario con la mayor premura, diligencia y rapidez posible. Esto, dado que, mientras más tiempo transcurre entre la infracción y la acción, más se mancilla, irremisiblemente, la figura del juez razonable, ecuánime, honesto e imparcial en la que se cimenta nuestro sistema de justicia.

Acto seguido, este Tribunal ordenó presentar las querellas correspondientes ante la Comisión de Disciplina Judicial (Comisión). La Querella AD-2014-1 está relacionada con el incidente del 5 de abril de 2013 y la Querella AD-2014-2 concierne los hechos que dieron lugar al eventual arresto del magistrado efectuado por las autoridades federales. Ambas querellas fueron debidamente notificadas al juez Acevedo Hernández. Los cargos presentados son los siguientes:

*Querella AD-2014-1:*

*Primer Cargo:* El Hon. Manuel Acevedo Hernández incurrió en conducta impropia e incompatible con los deberes y responsabilidades del cargo judicial que ostenta, al hacer referencia a su posición en la Judicatura y solicitarle a un oficial de la Policía de Puerto Rico un trato favorable hacia un tercero, quien fue detenido por conducir un vehículo de motor a exceso de velocidad y bajo los efectos de bebidas embriagantes. Al así actuar, el juez utilizó el prestigio y la confianza que le confiere el cargo judicial para influir en el ánimo de un oficial del orden público con el fin de que no se sometiera al detenido al procedimiento de rigor como consecuencia de su infracción a la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, según enmendada, infringiendo así los Cánones 1, 23 y 30 de Ética Judicial, además, del Canon 38 de Ética Profesional.

*Segundo Cargo:* El Hon. Manuel Acevedo Hernández exhibió, el 5 de abril de 2013, conducta contraria a las normas éticas que requieren que sus actuaciones promuevan la confianza en el sistema judicial del País y que, además, honren y exalten la integridad de su profesión. Al viajar como pasajero en un vehículo que iba conducido a exceso de velocidad por un gestor o empleado del Sr. Lutgardo Acevedo López, a los nueve (9) días de haber absuelto a este último tras presidir un procedimiento criminal en su contra, el juez Acevedo hizo total abstracción de tales deberes. Su proceder arrojó dudas sobre su capacidad para haber adjudicado el caso contra el señor Acevedo López con [parcialidad] y constituyó una crasa imprudencia, tanto en el ámbito de su vida privada, como en el profesional, en contravención a lo dispuesto en el Canon 23 *de Ética Judicial* y 38 *de Ética Profesional.* (Énfasis en el original). Caso AD-2014-1, Pieza 1, Querella, págs. 11 y 17.

*Querella AD-2014-2*:

*Primer Cargo*: El Hon. Manuel Acevedo Hernández comprometió su criterio e independencia, tras acordar, solicitar y aceptar dinero, favores bienes y/o servicios para sí y sus familiares a través del Sr. Ángel Román Badillo, intermediario del Sr. Lutgardo Acevedo López, en el entendido de que tal remuneración habría de influir en el descargo de sus funciones. En tales circunstancias, el Juez evadió su responsabilidad de respetar y adherirse fielmente a las leyes y a los Cánones, al utilizar el prestigio y la autoridad que le confiere el cargo judicial para su beneficio personal a cambio de proveerle un trato favorable al acusado Acevedo López. Con su proceder, el Querellado laceró y menoscabó los principios cardinales de la independencia judicial, pilar fundamental de nuestra sociedad democrática, así como la confianza en la administración de la justicia y el honor de la profesión legal. De esa forma, infringió los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 de Ética Judicial, así como los Cánones 35 y 38 de Ética Profesional.

*Segundo Cargo*: El Querellado lesionó la imagen de la Rama Judicial tras aceptar dinero, favores, bienes, regalos y/o servicios para sí y/o sus familiares a través de Román Badillo, intermediario de Acevedo López, irrespectivo de si dicho acuerdo influyera o no en sus determinaciones judiciales. Al así hacerlo, el Querellado infringió los Cánones 1, 23, 35 y 36 de Ética Judicial.

*Tercer Cargo*: El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad e imagen de la Judicatura al sostener comunicaciones *ex parte* con Román Badillo como intermediario de Acevedo López y/o con Acevedo López u otros terceros que participaron en el acuerdo para lograr un trato preferente y/o una determinación favorable para Acevedo López en el caso criminal que estaba ante la consideración del Querellado, en contravención al Canon 12 de Ética Judicial.

*Cuarto Cargo*: Las actuaciones y el comportamiento público del Querellado, al dar la impresión de haber comprometido su imparcialidad y haber utilizado el prestigio que le confiere el cargo para su beneficio personal, lesionaron la imagen de la Rama Judicial y socavaron la imagen pública de la Judicatura en contravención a los Cánones 1, 14 y 23 de Ética Judicial. Caso AD-2014-2, Pieza 1, Querella, págs. 13–14.

En respuesta, el juez Acevedo Hernández solicitó la paralización del procedimiento disciplinario. Fundamentó su petición en que tales hechos estaban ventilándose ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico. La Directora de la OAT se opuso enérgicamente por entender que el proceso disciplinario es independiente del proceso criminal. Ponderadas las posturas de las partes, la Comisión ordenó al juez Acevedo Hernández contestar las querellas. Al así proceder, *advirtió al togado que no hacerlo equivaldría a su anuencia a continuar el proceso sin el beneficio de su comparecencia.*

Tras varios trámites incidentales, el juez Acevedo Hernández contestó la Querella AD-2014-1. Específicamente, indicó que su intervención durante la detención del señor Román Badillo se limitó a preguntar por qué se había detenido a la persona, ya que no pensó que estuviera conduciendo en estado de embriaguez. En cuanto a la Querella AD-2014-2, el togado declinó contestarla por entender que estaba ligada a los procesos criminales en su contra. Luego, el 3 de noviembre de 2014, las Querellas fueron consolidadas.

La Comisión reiteró que continuaría con los procedimientos y pautó una vista para presentar evidencia. No obstante, los procesos fueron pospuestos porque coincidían con el juicio criminal ante el foro federal. En el ínterin, el 20 de enero de 2015, el juez Acevedo Hernández fue encontrado culpable de los delitos de soborno y conspiración por el foro federal. Finalizado el proceso federal, la Comisión señaló una vista para conocer sobre el estado de los procedimientos.

Por su parte, la Directora de la OAT compareció ante la Comisión y solicitó la separación inmediata del juez Acevedo Hernández de la profesión de abogado, así como su destitución como juez. Expuso que se podía disponer del asunto sin necesidad de trámite ulterior. Ello, pues la sen-

tencia es por delitos que implican depravación moral y lesionan la imagen de la Judicatura y la confianza del público general. La Directora de la OAT manifestó que la prueba desfilada demostró, con un *quantum* de prueba mayor, que el juez Acevedo Hernández comprometió su independencia judicial al aceptar favores, cenas, regalos y servicios con el entendido de que ello influiría en la determinación del juicio que presidía en contra del señor Acevedo López, a tal grado que le solicitó sus influencias para lograr ser nombrado como Juez del Tribunal de Apelaciones. A su vez, solicitó que se enmendara la Querella AD-2014-2 para incluir un cargo adicional relacionado con la sentencia del magistrado. Acompañó su solicitud con el veredicto de culpabilidad y las transcripciones de los testimonios ofrecidos en el foro federal.

A días de la vista señalada por la Comisión, el juez Acevedo Hernández solicitó que se le permitiera contratar una nueva representación legal. Expresó que no deseaba comparecer hasta agotar los remedios legales y procedimientos apelativos en el caso criminal ante el foro federal. La Comisión no suspendió la vista señalada y atendió los planteamientos de las partes.

A la vista señalada comparecieron todas las partes debidamente representadas. Tras escuchar las posturas de éstas, la Comisión decidió declarar "no ha lugar" la solicitud de renuncia de representación legal. Además, ordenó a las partes mostrar causa por la cual no debía acogerse la solicitud de la Directora de la OAT para disponer del caso con la prueba presentada, señaló la correspondiente vista para presentar evidencia y permitió incluir el cargo adicional a la querella. Éste dispone como sigue:

*Quinto Cargo*:

El 20 de enero de 2015, un Jurado Federal emitió un veredicto de culpabilidad contra el Querellado tras encontrar probada la comisión de los delitos de conspiración y soborno; ello, al Que-

> rellado solicitar, aceptar y recibir beneficios, favores y regalos a cambio de beneficiar a Acevedo López en el juicio criminal que presidió. Tal convicción lesiona la imagen de la Rama Judicial, mancilla la estima pública en la Judicatura y refleja claramente que el Querellado hizo total abstracción de los objetivos consagrados en los Cánones de Ética Judicial a los efectos de que los jueces y juezas no están por encima de la ley y son los primeros llamados a respetarla y cumplirla. De esta forma, el Querellado infringió los Cánones 1 y 23 de los de Ética Judicial, así como los Cánones 35 y 38 de Ética Profesional. Caso AD-2014-1, Pieza 2, Moción informativa sobre veredicto de culpabilidad contra el querellado, pág. 20.

En cumplimiento con la orden, el juez Acevedo Hernández no disputó el hecho de que recayó un veredicto de culpabilidad por los delitos de conspiración y soborno. En consecuencia, manifestó que procedía su suspensión provisional de la abogacía hasta tanto la sentencia fuera final y firme. Empero, se opuso a que las transcripciones de los procesos ante el foro federal se acogieran como prueba.

Entrabada la controversia, y conforme surge de la *Minuta* de los procedimientos, el juez Acevedo Hernández se allanó a que procedía suspenderlo de la abogacía porque fue hallado culpable por los delitos de conspiración y soborno y, además, manifestó que no tenía reparo en que se admitieran los documentos, siempre y cuando se presentara toda la transcripción del juicio criminal. Así las cosas, la Comisión señaló fecha para la celebración de la vista para presentar evidencia, ordenó mostrar toda la transcripción del juicio llevado a cabo en el foro federal y concedió un término para que las partes se expresaran en torno a ésta. Transcurrido ese plazo, se entendería el caso como sometido para su disposición final.

Las partes cumplieron con lo ordenado. En lo pertinente, el juez Acevedo Hernández expresó que los delitos graves por los cuales fue sentenciado "son causa para que

se le suspenda provisionalmente de la abogacía"(²) y solicitó que el procedimiento se disponga a base de ello. En cuanto a las transcripciones presentadas, el querellado manifestó que la "Comisión puede estudiarlos y tomar la decisión que entienda procedente".(³)

Posteriormente, en el mes de junio de 2015, el foro federal dictó la sentencia criminal. Impuso al juez Acevedo Hernández una pena de reclusión de cinco años por el delito de conspiración y diez años por el de aceptar soborno.(⁴) Luego de su excarcelación, estará en libertad supervisada por un periodo de tres años por cada cargo. Todas las penas deberán ser cumplidas concurrentemente. Asimismo, se le impusieron 240 horas de servicio comunitario y se le ordenó pagar una pena de $100 por cada cargo.

Finalmente, el 21 de julio de 2015, la Comisión rindió su informe, el cual advino final. En éste, señaló que la prueba presentada, a la que no se opuso el juez Acevedo Hernández, demuestra que aceptó regalos, cenas, bebidas, servicios de transportación, pagos de deudas contributivas con el Departamento de Hacienda, mejoras a un garaje de su residencia, ropa, yuntas, relojes, motora y otros objetos de valor de parte del señor Acevedo López por conducto de su intermediario, el señor Román Badillo. Para ello, el señor Román Badillo utilizaba el dinero que el señor Acevedo López le depositaba en sus cuentas bancarias. Tales actuaciones fueron parte de un esquema para que el juez Acevedo Hernández emitiera una determinación favorable al

---

(²) Véase Moción en Cumplimiento de Orden de 12 de junio de 2015.

(³) Íd.

(⁴) Por su parte, el señor Román Badillo llegó a un acuerdo con la fiscalía federal para colaborar con su testimonio, por lo que se declaró culpable de los cargos de conspiración y soborno que le imputaron con el fin de reducir la pena que le sería impuesta. Asimismo, el señor Acevedo López se declaró culpable ante el foro federal tras aceptar que pagó más de $50,000, hizo regalos y favores al juez Acevedo Hernández a cambio de que lo absolviera del caso criminal que el magistrado presidía en su contra.

señor Acevedo López en el caso criminal que el magistrado presidía en su contra.

La Comisión expuso que los testimonios ofrecidos en el juicio federal demuestran que el juez Acevedo Hernández aceptó ofrecer un trato favorable al señor Acevedo López a cambio de lograr un ascenso como Juez del Tribunal de Apelaciones, y conseguir trabajo para su hermano y un sobrino en dependencias gubernamentales. Como parte del esquema, el juez Acevedo Hernández revisó borradores de mociones que serían presentadas en la defensa del señor Acevedo López, visitó el lugar donde ocurrió el accidente, e hizo recomendaciones en cuanto a la estrategia de litigo a favor del acusado.[5]

De igual forma, la Comisión enfatizó que no existe duda de que el señor Román Badillo le brindó servicio de transportación al juez Acevedo Hernández a pocos días de que éste emitiera el veredicto de no culpabilidad a favor del señor Acevedo López. Durante ese trayecto, agentes del orden público detuvieron al señor Román Badillo por conducir a exceso de velocidad y en aparente estado de embriaguez. Durante la detención, el juez Acevedo Hernández intentó intervenir con el propósito de disuadir para que no se presentara una acusación de delito contra el señor Román Badillo.

Según tales determinaciones, la Comisión recomendó la destitución del juez Acevedo Hernández. Sin embargo, entendió que para imponer medidas disciplinarias por violación a la ley, los Cánones de Ética Judicial y los Cánones del Código de Ética Profesional, o a la reglamentación administrativa, un foro competente debe emitir una determinación final. La Comisión expone que, en los casos en que haya un resultado de culpabilidad, lo ideal sería esperar

---

[5] Parte de las acciones efectuadas por el juez Acevedo Hernández consisten en recomendar la contratación de un perito, verificar informes de llamadas y solicitar la devolución del vehículo confiscado.

que la sentencia impuesta sea final y firme antes de proceder a la destitución del magistrado.

No obstante, la Comisión reconoce que las reglas de disciplina judicial no contienen una disposición a estos efectos y tampoco existe un estatuto que ordene la destitución del magistrado. Ello, a diferencia de lo que ocurre en los casos del desaforo o la suspensión de un abogado o abogada. De esta manera considera que, para imponer una medida disciplinaria definitiva, como consecuencia de la sentencia a nivel federal, sería conveniente esperar a que concluya el trámite apelativo para que la sentencia advenga final y firme.

Examinemos, en primer término, si la acción disciplinaria que nos ocupa amerita supeditarse a los procesos ajenos a nuestra Rama.

## II

La Constitución de Puerto Rico, en su Art. V, Sec. 11, LPRA, Tomo 1, confiere autoridad exclusiva a este Tribunal para atender procedimientos disciplinarios relacionados con los jueces y las juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Esta facultad debe ser ejercitada siempre con gran celo. *In re Cancio González*, 190 DPR 290, 298 (2014). Para llevar a cabo esa función, aprobamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, que dirigen la conducta de jueces y juezas en nuestro Sistema Judicial. *In re Quiñones Artau*, 193 DPR 356 (2015). Éstos constituyen unas normas mínimas de conducta que rigen la Judicatura. *In re Birriel Cardona*, 184 DPR 301, 306–307 (2012); *In re Claverol Siaca*, 175 DPR 177, 188 (2009).

Desde su preámbulo, los Cánones de Ética Judicial reconocen la importancia de la función judicial y obligan a los jueces y las juezas al compromiso y a la responsabilidad de

imponer restricciones a su conducta, tanto en la esfera de sus funciones judiciales como en otras actividades profesionales y personales. *In re Berríos Jiménez*, 180 DPR 474 (2010); *In re Nevárez Zavala*, 123 DPR 511, 524 (1989). Así, a la vida jurídica son inherentes los sacrificios tanto en la esfera pública como privada, de forma tal que se enaltezca la integridad e independencia de la Judicatura.

■ La disposición para ocupar el cargo de juez o jueza exige que tal conducta sea ejemplar en todo momento, dentro y fuera del tribunal. La importancia de ello estriba en que "el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que estos sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema Judicial". *In re Cancio González*, supra, pág. 297. Ante tal realidad, hemos advertido que los jueces y las juezas se deben conducir éticamente, tanto en el ejercicio de las prerrogativas de sus cargos como en sus vidas privadas. *In re Ramos Mercado*, 170 DPR 363, 392 (2007), citando a *In re González Acevedo*, 165 DPR 81 (2005); *In re Ortiz Rivera*, 163 DPR 530 (2004). Esto también cobija la apariencia de la conducta del juez o de la jueza, que no tan sólo debe ser íntegra, sino que también debe parecerlo para evitar que se susciten legítimas dudas de cómo cumple su servicio judicial. *In re Ramos Mercado*, supra, págs. 392–393, citando la Exposición de Motivos, *Código Modelo Iberoamericano de Ética Judicial*, Cumbre Judicial Iberoamericana, 2006, pág. 3 (http://www.jusformosa.gov.ar/info/codiberoamericano2008.pdf).

El cargo de juez o jueza de la Rama Judicial es de loable envergadura. De esta forma, quien lo ocupa debe cumplir y representar altos valores éticos, pues su función consiste en proteger los derechos de los ciudadanos. Su hábito y conducta deben ser intachables; que sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema

Judicial. *In re Claverol Siaca*, supra, pág. 188. Es la confianza de los ciudadanos lo realmente esencial para el funcionamiento y la efectividad de los tribunales, porque es el respeto que la gente tenga a las instituciones judiciales lo que brinda a éstas fuerza y autoridad. Cualquier conducta que pueda lacerar la credibilidad que existe sobre el Poder Judicial marchita y empaña la investidura de aquellos y aquellas que honran día a día los postulados de la independencia judicial.

Cónsono con ello, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24 *et seq.*) dispone en su Art. 6.001 las medidas disciplinarias a las que están sujetos los miembros de la Judicatura cuando incurran en violaciones a la ley, a los Cánones de Ética Judicial, a los cánones del Código de Ética Profesional o a la reglamentación administrativa aplicable, o cuando manifiesten negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales. 4 LPRA sec. 25i. Entre las medidas disciplinarias que se pueden imponer, esta ley destaca la destitución del cargo, la suspensión de empleo y sueldo, limitaciones al ejercicio de la abogacía, que incluyen el desaforo, la censura, la amonestación y cualquier otra medida correctiva. 24 LPRA sec. 25j.

En aras de implementar el proceso disciplinario contra jueces o juezas, se aprobaron las Reglas de Disciplina Judicial. Este cuerpo normativo dispone el proceso a seguir concerniente a la acción disciplinaria que se pueda entablar contra algún miembro de la Rama Judicial para garantizar a la ciudadanía y a la Judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley. Regla 2 de Disciplina Judicial, 4 LPRA Ap. XV-B.

En apretada síntesis, el proceso disciplinario comienza con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de

los Tribunales o a iniciativa del Juez Presidente o Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora de la OAT.(⁶) Luego, y de entenderlo necesario, procede una investigación en la que se rinde un informe que será evaluado por una Comisión para determinar si existe o no causa probable para presentar una querella y cualquier otra recomendación para imponer medidas provisionales.(⁷) El Juez Presidente o la Jueza Presidenta podrá suspender de sueldo a un magistrado si es que se ha presentado una acusación en su contra por haber cometido un delito. De existir causa probable, se ordenará la presentación de la querella y su debida notificación.(⁸) El juez o la jueza objeto del proceso deberá contestar la querella dentro del término que se le provee para ello; si no lo hace, los cargos se considerarán negados. (⁹) Después, comienza un proceso de descubrimiento de prueba con el fin de celebrar una vista para presentar evidencia.(¹⁰) Posterior a tal vista, la Comisión emitirá un informe con su recomendación. Una vez ésta advenga final, el caso queda sometido para la decisión final del Tribunal.(¹¹)

El proceso disciplinario es de tal envergadura que, incluso, la renuncia o la expiración del término del nombramiento del juez o de la jueza querellada no impiden que continúe el procedimiento en su contra, a tal grado que se pueden recomendar medidas disciplinarias por violación al Código de Ética Profesional.(¹²) Asimismo, este Tribunal tiene la potestad de determinar el trámite a seguir en aquellas circunstancias no contempladas por el Reglamento, de

---

(⁶) Regla 5 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(⁷) Reglas 8 y 13 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(⁸) Regla 14 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(⁹) Regla 18 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(¹⁰) Regla 21 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(¹¹) Regla 30 de Disciplina Judicial, 4 LPRA Ap. XV-B.

(¹²) Regla 33 de Disciplina Judicial, 4 LPRA Ap. XV-B.

forma que se garantice el cumplimiento de los propósitos que inspiran la reglamentación y los derechos del juez o de la jueza, de quien promueve y la sana administración de la justicia.(13)

■ Por otra parte, la acción disciplinaria no está supeditada a ningún otro proceso. Ésta es independiente a las acciones civiles o criminales que puedan surgir de los mismos hechos. *In re De la Texera Barnes*, 165 DPR 526, 534 (2005); *In re Deynes Soto*, 164 DPR 327, 337 (2005). El proceso disciplinario no está subordinado a resultado alguno en otra esfera, ya sea civil o criminal, pues la corrección ética no constituye un castigo sino que persigue proteger al público y a la profesión legal mediante una investigación de las condiciones morales del querellado para determinar si puede continuar ejerciendo el cargo. Véanse: *In re García Aguirre*, 175 DPR 433, 441 (2009); *In re Olivera Mariani*, 173 DPR 498 (2008); *In re Barreto Ríos*, 157 DPR 352, 356 (2002); *In re Liceaga*, 82 DPR 252 (1961).

■ De igual forma, y dada la independencia de los procesos, es importante destacar que la Comisión carece de autoridad para adjudicar si la persona querellada cometió un delito. Su rol se restringe a evaluar la prueba para determinar si se han violado los Cánones de Ética Judicial. Como corolario, la Comisión se limita a escudriñar si el juez o la jueza incurrieron en conducta proscrita por los cánones. Sin embargo, por el diverso alcance del peso probatorio requerido, esa determinación no constituye una adjudicación de la posible responsabilidad penal de un querellado. *In re Ramos Mercado*, supra, págs. 401–402. Claro está, posiblemente bastaría con sentenciar criminalmente a un juez o una jueza para concluir que éste o ésta

---

(13) Regla 34 de Disciplina Judicial, 4 LPRA Ap. XV-B.

ha incurrido en una violación a los Cánones de Ética Judicial. Empero, la absolución en un proceso penal no necesariamente implica que no se quebrantaron las normas éticas. Íd. Mucho menos, la medida disciplinaria está atada al resultado del proceso penal. Véase *In re Soto López*, 135 DPR 642, 646 (1994).

En la encomienda de determinar una transgresión moral, la Comisión realiza la importante función de aquilatar la prueba para formular las determinaciones de hechos, conclusiones de derecho y recomendaciones que estime pertinentes. *In re Ruiz Rivera*, 168 DPR 246, 253 (2006). Así, las determinaciones de hechos que realice merecen nuestra deferencia. Íd., pág. 278; *In re Saavedra Serrano*, 165 DPR 817, 829 (2005). Empero, ello no supone una abdicación de este Tribunal para aplicar la acción disciplinaria que estime adecuada, por lo que es un precedente arraigado el que no estamos obligados a aceptar las recomendaciones de la Comisión sobre la querella disciplinaria. *In re Sierra Enríquez*, 185 DPR 830, 853 (2012); *In re Muñoz, Morell*, 182 DPR 738, 749–750 (2011); *In re Hon. Maldonado Torres*, 152 DPR 858, 869 (2000).

Para lograr ese ejercicio, se requiere que se aquilate la prueba según la carga probatoria aplicable; es decir, la prueba debe ser clara, robusta y convincente. Regla 18 de Disciplina Judicial, 4 LPRA XV-B. Véanse, además: *In re Ruiz Rivera*, supra, pág. 253; *In re Rodríguez Mercado*, 165 DPR 630, 641 (2005). Tal carga probatoria es mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable que exige el proceso penal. La prueba clara, robusta y convincente es una prueba que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. *In re Irizarry Rodríguez*, 193 DPR 633 (2015); *In re Rodríguez Mercado*, supra, pág. 641.

# III

En las querellas consolidadas que nos ocupan se imputa al juez Acevedo Hernández quebrantar varios Cánones de Ética Judicial. En específico, infringir los cánones siguientes: (1) el Canon 1, que impone a los magistrados y magistradas el deber de respetar y cumplir con las leyes y ser fieles a su juramento; (2) el Canon 2, que recalca que los jueces y las juezas ejemplificarán su independencia judicial, tanto en sus aspectos individuales como constitucionales; (3) el Canon 8, que exige ejercitar sus funciones de forma independiente, libre de cualquier influencia ajena, excluyendo la posible apariencia de que son susceptibles de actuar por influencias de personas o por motivaciones impropias; (4) el Canon 11, que impone a los magistrados y las magistradas que se abstengan de solidarizarse con cualesquiera partes y prohíbe que realicen gestiones que constituyan intervenciones indebidas con la prueba, los testigos o cualquier aspecto del proceso judicial; (5) el Canon 12, que proscribe la comunicación privada de los jueces y las juezas con las partes o sus representantes legales, e impide que éstas influyan la actuación judicial en asuntos de su competencia o bajo su consideración; (6) el Canon 14, que rige los postulados del proceder de los jueces y las juezas durante los procedimientos judiciales; (7) el Canon 20, que limita la actuación de los jueces y las juezas en casos en los que tengan o puedan tener prejuicio o parcialidad hacia alguna de las partes, interés personal o económico en el resultado del caso, por cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia. Además, requiere que en estos casos los jueces y las juezas se inhiban tan pronto conozcan que así procede.

De igual forma, se imputó la violación al Canon 23 que intima el deber general de los jueces y las juezas sobre cómo comportarse públicamente para que sus actuaciones no provoquen duda sobre su capacidad para adjudicar imparcialmente las controversias judiciales. Asimismo, el Canon 23 requiere que sus actuaciones no deshonren el cargo judicial y no interfieran el cabal desempeño de sus funciones judiciales. A su vez, se denunció la inobservancia del Canon 30 que veda a los jueces y las juezas que incurran en conducta o actuación que dé la impresión de que ejercen o pretenden ejercer influencia indebida en el descargo de sus funciones judiciales. También, se imputó violación al Canon 35 que impide a los jueces y las juezas aceptar regalos, legados, favores o préstamos de persona alguna, y el Canon 36 que prohíbe el que un juez o una jueza utilice el prestigio de su cargo para obtener beneficios personales o fomentar el éxito de negocios o actividades comerciales económicas personales o familiares. Igualmente, el Canon 36 que proscribe que un juez o una jueza intervenga en pleitos cuyo resultado pudiera afectar sustancialmente un interés personal o familiar. Asimismo, deben actuar con cautela y prudencia para evitar la apariencia de conducta impropia o la sospecha razonable de que utilizan su cargo o prestigio para su beneficio personal o el de otras personas.

Los cánones imputados responden a la obligación moral y social que conlleva el ministerio de la Judicatura. Custodian la importancia de la imparcialidad y su apariencia en el ejercicio de las funciones judiciales. *In re Ramos Mercado*, supra, págs. 404–405. Su conducta debe honrar la integridad e independencia de su ministerio. *In re Martínez González*, 151 DPR 519, 527 (2000).

En los jueces y las juezas se consagra el interés de que el deber judicial trascienda la función de administrar e interpretar la ley. La figura del juez o de la jueza requiere

que se enaltezca la independencia judicial como garantía de justicia. Para ello, les está vedada la intervención en las causas judiciales de cualquier manera, ya sea a favor de una parte ante su sala o en el beneficio propio del magistrado o de terceros. Su función debe estar siempre libre de intervenciones parcializadas que puedan influir en el caso o minar la confianza en los tribunales.

■     Un juez o una jueza que otorga ventaja indebida a alguna parte dentro del proceso judicial actúa en contra del debido proceso de ley. *In re Aprobación Cánones Ética 2005*, 164 DPR 403, 424 (2005). Por ello, resulta una práctica prohibida que un juez o una jueza sostenga comunicaciones privadas con las partes o con sus representantes legales en las que se pretenda influir en su actuación judicial en asuntos de su competencia o bajo su jurisdicción como magistrado cuando los otros intereses no estén representados. El juez o la jueza debe ser imparcial, por ello debe despojarse de todo vínculo que pueda arrojar dudas sobre su capacidad para adjudicar la controversia. *In re Grau Acosta*, 172 DPR 159, 171 (2007); *In re Martínez González*, supra, pág. 531.

■     Al juez o a la jueza se le exige que responsablemente se inhiba oportunamente para proteger la legitimidad de sus actuaciones y la confianza de la ciudadanía en la Judicatura. *In re Ramos Mercado*, supra, págs. 404–405. Por ello, como expresamos, el Canon 20 impone la obligación de inhibirse en casos en donde haya un interés personal o económico, prejuicio o parcialidad hacia las partes y por cualquier causa que pueda, razonablemente, arrojar dudas sobre su imparcialidad.

■     De igual forma, el Canon 23 requiere que el comportamiento en público de los jueces y las juezas no ponga en duda su capacidad para ejercer su función adjudicativa de forma imparcial. Este canon va dirigido a que el comportamiento dentro y fuera del tribunal sea de respeto y enal-

tezca el cargo judicial. *In re Aprobación Cánones Ética 2005*, supra, pág. 445.

## IV

En el caso de autos, la prueba presentada y no objetada consistió en la transcripción del proceso criminal federal. Véase *In re De la Texera Barnes*, supra, pág. 534. Examinados los testimonios allí vertidos, coincidimos con las determinaciones de hechos recogidas en el informe de la Comisión.

Sin lugar a dudas, la prueba presentada es clara, robusta y convincente para establecer, sin reservas, que el juez Acevedo Hernández deshonró la toga. El testimonio expresado por el señor Román Badillo es contundente en cuanto al esquema realizado conjuntamente con el señor Acevedo López para que éste saliera airoso del proceso penal que presidía el magistrado.

La prueba presentada revela que desde noviembre de 2012 hubo un contubernio para que el juez Acevedo Hernández fallara a favor del señor Acevedo López en la adjudicación criminal. A cambio de ello, el juez Acevedo Hernández se reunió en varias ocasiones con el señor Román Badillo, disfrutó de cenas, regalos, relojes, yuntas, motora, pagos de contribuciones y pagos para remodelar su hogar. Asimismo, solicitó que se interviniera para lograr su nombramiento en el Tribunal de Apelaciones y conseguir empleo a dos familiares. Para lograr tal encomienda, el juez Acevedo Hernández compareció a eventos públicos y restaurantes con el gestor del señor Acevedo López. Igualmente, y mientras se dilucidaba el proceso criminal, delegó en el señor Román Badillo la compra de materiales para arreglar su garaje.

La participación del juez Acevedo Hernández fue activa. Éste revisó borradores de mociones que presentó la defensa del señor Acevedo López y visitó el lugar donde ocu-

rrió el accidente para hacer recomendaciones relacionadas con la estrategia de litigio, tales como la contratación de peritos, la verificación de llamadas y la solicitud de devolución del vehículo confiscado.

No tan sólo el juez Acevedo Hernández incurrió en estas prácticas, sino que su osadía llegó al grado de comparecer públicamente a distintas actividades, fiestas y cenas acompañado con el gestor de un imputado de delito en un caso que él presidía. Su procacidad fue a tal nivel que a días de exonerar al señor Acevedo López era transportado por el señor Román Badillo a un seminario judicial. Durante el viaje de regreso cenó con el señor Román Badillo e ingirió bebidas alcohólicas. Ello dio lugar a que el señor Román Badillo fuera detenido por conducir a exceso de velocidad y en aparente estado de embriaguez. Como si fuera poco, el juez Acevedo Hernández se atrevió a inquirir en torno a la detención del señor Román Badillo que efectuaron los agentes del orden público y a solicitar concesiones a su favor. El prestigio del cargo no es razón para reclamar privilegios y subvertir los procesos regulares. *In re Ramos Mercado*, supra, págs. 396–397. Es la obligación del juez o de la jueza evitar crear, incluso, la apariencia de que utiliza su título como instrumento de intimidación o para imprimir mayor peso a sus reclamos. *In re Gaetán y Mejías*, 180 DPR 846, 859 (2011).

Ciertamente, las transcripciones presentadas reflejan, sin ambages, prueba clara, robusta y convincente a los efectos de que el juez Acevedo Hernández violó los más fundamentales principios de independencia judicial. Estamos ante unos hechos en los que el togado solicitó y recibió favores o beneficios para realizar la función judicial. De esta manera, el juez Acevedo Hernández socavó las más elementales nociones de honestidad y la moral. Con sus actuaciones, incurrió en una conducta contraria a la justicia, la honradez y los buenos valores. Es la primera vez que un juez es procesado criminalmente por ser parte de un

esquema para beneficiar a un acusado a cambio de recibir bienes o servicios para sí o para terceros.(14) Ello constituye una triste página en la historia de la Rama Judicial.

Las acciones del juez Acevedo Hernández no representan a los miembros de la Judicatura que se conducen de forma digna, íntegra y honrada. Mucho menos son un reflejo de aquellos que con su faena diaria inmolan la justicia. La función judicial requiere que el juez o la jueza conserven en todo su desempeño la rectitud de su conducta, tanto dentro como fuera del tribunal. *In re Cruz Aponte*, 159 DPR 170, 186 (2003).

Le corresponde a este Tribunal cerciorarse de que nuestros jueces y nuestras juezas continúen siendo ejemplos idóneos en la expresión constante de su conducta. Véase *In re Martínez González*, supra, págs. 530–531. Los valores éticos que se requieren a los jueces y las juezas son más exigentes que para los abogados y las abogadas. La razón estriba en que los jueces y las juezas administran la justicia.

La sentencia del juez Acevedo Hernández es independiente de la acción disciplinaria ante este Tribunal. Por tanto, contrario a la recomendación de la Comisión, no es necesario esperar a que el veredicto criminal sea final y firme. La facultad inherente del poder disciplinario de este Tribunal no puede estar subordinada a ningún proceso penal o civil y tampoco a las partes. Este Tribunal puede imponer y no tiene que posponer la sanción disciplinaria que proceda, una vez se garanticen las salvaguardas del proceso dispuesto para ello.

Ciertamente, el resultado penal constituye un agravante adicional, pues no podemos ignorar que una sentencia por soborno y conspiración en el descargo de sus funciones adiciona un efecto perjudicial a la conducta antes

---

(14) En una ocasión anterior se procesó a un juez por soborno porque cobraba por oficiar bodas en horas en que ejercía su función judicial. Véase *In re Rodríguez Zayas*, 151 DPR 532 (2000).

esgrimida.[15] La sentencia por conducta inmoral en sí misma lesiona la confianza que la ciudadanía pueda tener en quien se supone imparta justicia. Ese menoscabo no está sujeto a que la sentencia criminal sea firme. Su repercusión trasciende el resultado final. Una vez mancillada la imagen de imparcialidad del juez Acevedo Hernández, o de cualquier otro, éste simplemente carece de la entereza para ocupar el cargo. Para merecer el respeto de la sociedad y que se acaten sus decisiones, el juez y la jueza tienen que ser y proyectarse como seres humanos sin tacha. Por ello, no basta solamente con ser bueno o buena, sino también parecerlo. No se admiten términos medios. Véase *In re Gaetán y Mejías*, supra, págs. 858–859.

De acuerdo con lo expuesto, concluimos sin ambages que el juez Acevedo Hernández infringió los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 del Código de Ética Judicial, *supra*.

## V

Por último, la gravedad de la conducta en la cual incurrió el juez Acevedo Hernández permite su destitución provisional de la profesión jurídica. Se ha presentado copia certificada de la sentencia por delitos graves que implican depravación moral emitida por el Tribunal de Distrito Federal para el Distrito de Puerto Rico en contra del juez Acevedo Hernández. A la luz de esa realidad, y en multiplicidad de casos, este Tribunal no ha vacilado en destituir inmediatamente a los abogados y las abogadas del privilegio de ejercer la profesión jurídica. Véanse: *In re Colón Ledée*, 190 DPR 51 (2014); *In re Martínez Maldonado*, 185 DPR 1085 (2012); *In re Arroyo Arroyo*, 182 DPR 83 (2011); *In re Castillo Martínez*, 173 DPR 249 (2008); *In re Morell Corrada*, 171 DPR 327 (2007).

---

[15] Más aún cuando los otros imputados de delitos hicieron alegación de culpabilidad por los mismos hechos.

■ Empero, el procedimiento disciplinario ante nuestra consideración incluyó infracciones a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. A estos efectos, recordamos que para ocupar el cargo de juez o jueza es un requisito ser abogado o abogada. Por lo tanto, a los jueces y las juezas les aplican, igualmente, las normas mínimas que rigen la profesión jurídica. De igual forma, están sujetos al poder inherente de este Tribunal para reglamentar el ejercicio de la abogacía. *In re Colón Ledée*, 193 DPR 188 (2015). En tal facultad, resulta incuestionable que este Tribunal pueda desaforar o suspender a aquellos miembros de la profesión jurídica que no estén aptos para desempeñar tal ministerio. *In re García Suárez*, 189 DPR 995, 998 (2013). El ejercicio que de la autoridad judicial hagan el juez o la jueza —quien ocupa el cargo porque es abogado o abogada— no le puede relevar de las normas básicas de conducta que los valores éticos de su condición profesional le imponen. *In re Gallardo*, 81 DPR 19 (1958). Por consiguiente, el cargo que ocupa no puede servir como escudo para escapar de las consecuencias disciplinarias de su conducta como abogado o abogada. Íd. Ante ello, el procedimiento disciplinario contenido en las Reglas de Disciplina Judicial no excluye aquellas violaciones relacionadas al Código de Ética Profesional.

En consecuencia, durante el proceso disciplinario ante este Tribunal, se le imputó al juez Acevedo Hernández vulnerar los Cánones 35 y 38 del Código de Ética Profesional. Éstos sancionan la conducta de un miembro de la profesión jurídica que no sea honesto y no exalte el honor y la dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales. Véase *In re Santiago Concepción*, 189 DPR 378, 404–405 (2013).

■ En lo que nos concierne, el Canon 35 establece que la conducta de cualquier miembro de la profesión jurídica ante los tribunales, hacia sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

La importancia del referido canon consiste en que la "verdad y la justicia están necesariamente juntas: por lo que sería intrínsecamente contradictorio administrar la justicia o reclamar su actuación, sin respetar la verdad". (Énfasis suprimido). *In re Colton Fontán*, 128 DPR 1, 112 (1991), citando a G. Del Vecchio, *La obligación jurídica de la verdad*, 11 Rev. Fac. Der. y Ciencias Sociales de Montevideo 13, 25 (1960). Allí se dispone que no es sincero ni honrado utilizar medios que sean inconsecuentes con la verdad y que no se debe inducir a error al juzgador mediante la utilización de artificios o de una falsa relación de hechos o del Derecho. Así, se requiere que todo miembro de la profesión debe cumplir con los deberes de sinceridad, exaltación del honor y dignidad de la profesión. En virtud de ello, el abogado que provee información falsa al tribunal o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon. *In re Nieves Nieves*, 181 DPR 25, 41–42 (2011). Los abogados y las abogadas deben siempre cumplir con la verdad. *In re Salas Arana*, 188 DPR 339 (2013). Lo esencial para que se infrinja el Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión jurídica. *In re Molina Oliveras*, 188 DPR 547, 554 (2013) (Resolución).

Por su parte, el Canon 38 exige a los abogados y las abogadas preservar el honor y la dignidad de la profesión que representan, aunque ello suponga sacrificios personales. La función social que ejerce y la institución que representa demanda que se desempeñe con el más alto sentido de responsabilidad profesional y ética en todas la facetas de su vida. *In re Irizarry Rodríguez*, supra. Los abogados y las abogadas deben desempeñarse con dignidad y alto sentido del honor, aunque ello implique sacrificios personales, y se deberá conducir digna y honorablemente, tanto en su vida privada como en el desempeño de su profesión. *In re Quiñones Ayala*, 165 DPR 138, 145 (2005).

Cada abogado es un espejo en el que se refleja la

imagen de la profesión. *In re Ortiz Brunet*, 152 DPR 542, 556 (2000), citando a *In re Coll Pujols*, 102 DPR 313, 319 (1974). El Canon 38 se infringe con el sólo hecho de que la actuación del abogado o de la abogada sea incompatible con su deber y su conducta sea impropia y afecte su independencia profesional frente a otro interés público o privado. *In re Molina Oliveras*, supra, pág. 555.

La incompatibilidad de funciones puede ser por razones de derecho o hecho. *In re Corona Muñoz I*, 141 DPR 640, 647 (1996). La incompatibilidad de derecho presupone una norma legal que prohíbe el ejercicio de la abogacía y, a la vez, otra actividad, función o cargo, mientras que la de hecho se refiere a que los puestos tienen conflictos más o menos permanentes en sus deberes. Íd.

La prueba clara, robusta y convincente presentada en este caso estableció que las actuaciones del juez Acevedo Hernández constituyeron también infracciones a los Cánones 35 y 38 del Código de Ética Profesional, este último en su vertiente del requerimiento de exaltar el honor y la dignidad de su profesión. El hecho de que el juez Acevedo Hernández se desempeñara como magistrado no le exime del cumplimiento con las normas mínimas que imperan en la profesión jurídica. Mientras éste era juez, fungió y asesoró legalmente al imputado que debía enjuiciar. Igualmente, intentó influir en el ánimo de un oficial del orden público a favor de un tercero. Durante el proceso judicial que presidió antepuso sus intereses personales a la búsqueda de la verdad y justicia. Con sus actuaciones, faltó a la lealtad que su cargo requiere, socavó su independencia de criterio y entorpeció la búsqueda de la verdad y la justicia en contravención al honor y dignidad de la profesión.

## VI

Como corolario, este Tribunal concluye que el juez Acevedo Hernández incurrió en violaciones a los Cánones 1,

2, 8, 11, 12, 14, 20, 23, 30, 35 y 36 de Ética Judicial, y a los Cánones 35 y 38 del Código de Ética Profesional. Ningún juez o jueza de la Rama Judicial puede escapar a las consecuencias disciplinarias de una conducta que lacera nuestro sistema de justicia. Basta con una decisión judicial fundada en motivaciones impropias o en favoritismo hacia un litigante o su abogado para que proceda la destitución. *In re Jackson Sanabria*, 97 DPR 1, 6–7 (1969).

En vista de ello, *procedemos a destituir inmediatamente al Lcdo. Manuel Acevedo Hernández del cargo de Juez Superior y suspenderlo indefinidamente de la profesión de la abogacía.*

*Se dictará sentencia de conformidad.*