*In re* LUIS HUERTAS SOTO, querellado.

*Número:* CP-2012-2          *Resuelto:* 29 de marzo de 2016

*Tatiana M. Grajales Torruella*, subprocuradora general, y *Yaizamarie Lugo Fontánez*, procuradora general auxiliar; *Rafael Torres Alicea* y *Valéry López Torres*, abogados del querellado; *Luis E. Huertas Soto, pro se*; *Crisanta González Seda*, comisionada especial.

PER CURIAM: En esta ocasión debemos sancionar a un abogado por incurrir en conducta impropia y faltar al deber de esforzarse al máximo de su capacidad por exaltar el honor y la dignidad de la profesión. Ello en contravención de lo dispuesto en el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Veamos los hechos y el tracto procesal de este caso.

I

El origen de esta querella se remonta a mayo de 2003, cuando varias compañías aseguradoras[1] presentaron una queja en la Oficina de la Procuradora General en contra del Lcdo. Rafael Rivera Vázquez y del Lcdo. Luis E. Huertas Soto (el querellado).[2] Las aseguradoras alegaron que el licenciado Rivera Vázquez y el querellado, como parte de un esquema de fraude, representaron a clientes en varias reclamaciones falsas basadas en supuestos accidentes de tránsito. Como resultado de dichas reclamaciones, las aseguradoras emitieron cheques en concepto de indemniza-

---

[1] Estas son: Puerto Rican American Insurance Company, National Insurance Company, Universal Insurance Company, Caribbean Alliance Insurance Company, Integrand Assurance Company, Cooperativa de Seguros Múltiples y la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio.

[2] El querellado fue admitido a la abogacía el 13 de agosto de 1986 y a la notaría el 28 de agosto del mismo año.

ción por un total de $947,911.90. Además, las aseguradoras indicaron que supieron de estos hechos durante unas investigaciones anteriores y concurrentes a la presentación de una demanda contra el licenciado Rivera Vázquez y el querellado, entre otros, ante el Tribunal Federal de Distrito para el Distrito de Puerto Rico (Tribunal Federal), al amparo de la legislación *Racketeer Influenced and Corrupt Organization Act* (RICO).[3] Como parte de esa acción, las aseguradoras solicitaron la devolución de los fondos desembolsados.

Previendo la posibilidad de que estos hechos implicaran la comisión de delitos, la Oficina de la Procuradora General refirió la queja a la Oficina del Fiscal General. Sin embargo, posteriormente la Oficina del Fiscal General cerró la investigación y no inició procedimiento criminal alguno.[4] No surge que durante esta etapa la Oficina de la Procuradora General realizara algún trámite con relación a la queja contra el querellado.

Por su parte, el 12 de junio de 2008 el Tribunal Federal dictó sentencia en el caso *Puerto Rico American Insurance Company, et al. v. Carlos Burgos, et al.*, Civil Núm. 01-1186, y determinó que el licenciado Rivera Vázquez y el querellado participaron en un esquema de fraude en violación a RICO, en el cual presentaron, en conjunto e individualmente, veintidós reclamaciones falsas a varias compañías aseguradoras. En consecuencia, el Tribunal Federal condenó al querellado a pagar a las aseguradoras la cantidad de $1,440,802.86. Esta sentencia es final y firme.

Por otro lado, el Director Ejecutivo de la Administración de Compensaciones por Accidente de Automóviles (ACAA),

---

[3] *Puerto Rico American Insurance Company, et al. v. Carlos Burgos, et al.*, Civil Núm. 01-1186.

[4] No obstante, en relación con los hechos relatados en la queja de las aseguradoras, se presentó una acusación criminal en el Tribunal Federal de Distrito para el Distrito de Puerto Rico (Tribunal Federal) contra el licenciado Rivera Vázquez. En mayo de 2006, el licenciado Rivera Vázquez hizo alegación de culpabilidad por el delito de conspiración para defraudar al servicio postal y fue condenado a doce meses de prisión y tres años de libertad bajo supervisión electrónica. En consecuencia, el 16 de junio 2006 se le suspendió de la abogacía y notaría. *In re Rivera Vázquez*, 168 DPR 168 (2006).

basándose en las determinaciones de hechos de la mencionada sentencia, refirió un informe para investigación a la Oficina del Fiscal General. Esta Oficina, sin embargo, concluyó que cualquier delito que pudiera surgir de los hechos se encontraba prescrito. Por ello, refirió el asunto nuevamente a la Oficina de la Procuradora General para que considerara si, como resultado de estos sucesos, el querellado violó alguna disposición de los Cánones del Código de Ética Profesional, *supra*.[5]

Durante el proceso de investigación, la Oficina de la Procuradora General obtuvo una declaración jurada de 15 de febrero de 2006 en la cual el querellado, de su puño y letra, admitía haber conocido que las reclamaciones a las aseguradoras eran fraudulentas y que, aun así, siguió aceptando esos casos:

> "Para finales del año 1997, confronto a Rivera Vázquez sobre mi sospecha y éste me admite que Iván Cabrera creaba estos casos lo que significaba que algún fraude se estaba cometiendo. En respuesta de mi señalamiento el Lcdo. Rivera me admite que ese acto de fraude era problema de Iván Cabrera y no de él y mío. A pesar de ello continúe [sic] aceptando los casos referidos por el Lcdo. Rivera".[6]

Así, luego de otros trámites, la Procuradora General presentó un Informe a este Tribunal en el que recomendó la presentación de una querella por violación al Canon 38 de Ética Profesional, *supra*. El querellado replicó y basó su defensa, fundamentalmente, en que aunque presentó las reclamaciones y cobró los cheques, ignoraba que se tratara de reclamaciones fraudulentas.[7]

Examinados el Informe y su réplica, le ordenamos a la Oficina de la Procuradora General que procediera a presentar la querella. Así, en cumplimiento con nuestra orden,

---

[5] La Oficina del Fiscal General también remitió al Procurador General copia de la Sentencia del Tribunal Federal.

[6] Acta de conferencia con antelación a la vista, 18 de octubre de 2013, pág. 2.

[7] Contestación a querella, pág. 13. En efecto, con relación a estos hechos, no le presentaron cargos criminales al querellado.

la Procuradora General le imputó al querellado el cargo siguiente:

> El licenciado Luis Huertas Soto violó los preceptos del Canon 38 de Ética Profesional, el cual establece que los abogados deben esforzarse al máximo en la exaltación del honor y la dignidad de la profesión y debe evitar hasta la apariencia de conducta impropia y obliga a denunciar valientemente ante el foro correspondiente cualquier conducta impropia de cualquier colega.[8]

Después de que el querellado contestara la querella, nombramos a la Hon. Crisanta González Seda, exjueza del Tribunal de Primera Instancia, como Comisionada Especial para recibir la prueba y nos rindiera un informe con las determinaciones de hechos y recomendaciones que estimara pertinentes. El 12 de diciembre de 2013 se celebró la vista final ante la Comisionada Especial, en la cual únicamente testificó el querellado. La Procuradora General, por su parte, dio el caso por sometido a base de la prueba documental que obra en el expediente. Después de otros trámites, la Comisionada Especial entregó su Informe, en el que concluyó lo siguiente:

> Las actuaciones del querellado en su desempeño como abogado, encubriendo y participando en lo que tenía que saber, que eran actos delictivos, y en este procedimiento, tratando de evadir su responsabilidad y expresando que no quería denunciar al licenciado Rivera Vázquez crean la apariencia de una conducta impropia, no importa cuáles pudieran ser sus justificaciones para ello.[9]

Con respecto al trasfondo de los hechos que dieron lugar a la queja, la Comisionada Especial determinó que para el 1995 el querellado arrendó un espacio de oficina dentro del despacho del licenciado Rivera Vázquez, de quien se con-

---

[8] Querella, pág. 3.

[9] Informe de la Comisionada Especial, pág. 26.

virtió en compañero de oficina.(¹⁰) Eventualmente, el licenciado Rivera Vázquez comenzó a referirle casos sobre accidentes de tránsito ficticios, en los cuales el querellado presentó la reclamación a las aseguradoras y tramitó el pago de la indemnización.(¹¹) Así, desde el 1997 hasta el 2001, el licenciado Rivera Vázquez y el querellado instaron un total de veintidós reclamaciones falsas.(¹²)

Por su parte, el querellado replicó al Informe de la Comisionada Especial y reiteró que desconocía la falsedad de las reclamaciones. Con respecto a su declaración jurada, adujo que esta la prestó de forma involuntaria ante la amenaza de que le presentaran cargos criminales y sin la oportunidad de contar con un abogado. Por ello, sostuvo que la declaración debía ser excluida por haber sido prestada en violación a su derecho contra la autoincriminación.(¹³)

Con el beneficio del Informe de la Comisionada Especial, la réplica, así como los demás documentos y la prueba que se encuentra en el expediente, procedemos a resolver.

## II

Hemos expresado que "[e]l día en que un abogado presta juramento ante el Tribunal Supremo le es concedido un gran privilegio: el de poder ejercer una profesión, honrosa por demás, que tiene una rica y extraordinaria tradición y que desempeña un importante papel en nuestra sociedad". *In re Quintero Alfaro*, 2004 TSPR 20, pág. 3, 161

---

(¹⁰) Además del querellado y el licenciado Rivera Vázquez, el despacho lo compartían otros dos abogados.

(¹¹) A su vez, según determinó la Comisionada Especial, el Sr. Iván Cabrera Garay se encargaba de traer a la oficina los casos en que se basaban las reclamaciones falsas.

(¹²) Asimismo, los documentos que apoyaban estas reclamaciones, tales como los partes médicos y la querella policial, no eran auténticos. Por otra parte, en el caso del querellado, éste cobraba como honorarios de abogado el 15% de lo pagado por las aseguradoras. Informe de la Comisionada Especial, pág. 13.

(¹³) Comentarios, objeciones y recomendaciones sobre Informe de la Comisionada Especial, págs. 1–5.

DPR Ap. (2004). Así, al juramentar, el abogado se convierte en un funcionario del Tribunal y se compromete a desempeñar su función con la mayor competencia, compromiso e integridad. *In re Quintero Alfaro*, supra; *Ramos Acevedo v. Tribunal Superior*, 133 DPR 599, 613–614 (1993).

El privilegio de desempeñar esta profesión no está exento de responsabilidades, entre ellas la de cumplir fielmente con los deberes que impone el Código de Ética Profesional. El objetivo de este Código es propiciar que los abogados se desempeñen, profesional y personalmente, acorde con los más elevados principios de conducta. Ello para beneficio de la ciudadanía, las instituciones de justicia y la profesión jurídica. *In re Pujol Thompson*, 171 DPR 683 (2007); *In re Izquierdo Stella*, 154 DPR 732 (2001).

Asimismo, hemos aclarado que el fin del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión mediante una investigación del comportamiento ético del abogado y de sus condiciones morales. *In re Olivera Mariani*, 173 DPR 498 (2008); *In re Liceaga*, 82 DPR 252 (1961).

■ En particular, nos corresponde considerar —por ser el cargo imputado en la querella de autos— el Canon 38 del Código de Ética Profesional, *supra*. En lo pertinente, éste dispone que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión, tales como: denunciar valientemente, ante el foro correspondiente, todo tipo de conducta corrupta y deshonrosa de cualquier colega o funcionario judicial [...]

En conformidad con los propósitos y fundamentos del

Código de Ética Profesional, hemos dicho sobre el Canon 38 que infringirlo "resulta nocivo al respeto que la ciudadanía deposita en las instituciones de la justicia y la confianza de los clientes hacia sus abogados". *In re Santiago Tirado*, 173 DPR 786, 794 (2008). Véase *In re Acevedo Hernández*, 194 DPR 344 (2015).

■ Por otra parte, en vista de que los procedimientos disciplinarios pueden tener el efecto de incidir sobre la licencia de un abogado o notario para ejercer su profesión y generar los medios económicos para sustentarse, establecimos que el estándar de prueba para hallar a un abogado incurso en una violación ética es el de "prueba 'clara, robusta y convincente', no afectada por reglas de exclusión ni a base de conjeturas". *In re Rodríguez Mercado*, 165 DPR 630, 640 (2005). Al respecto, hemos dicho que *prueba clara, robusta y convincente* es " 'aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables' ". *In re Martínez Almodóvar*, 180 DPR 805, 820 (2011), citando a *In re Rodríguez Mercado*, 165 DPR 630, 641 (2005).

## III

El Tribunal Federal, el cual no tuvo ante sí la declaración jurada en la que el querellado admitió haber tenido conocimiento de la falsedad de las reclamaciones, dictó una sentencia sumaria y determinó que el querellado, entre otras personas, participó en un esquema fraudulento mediante el cual presentó varias reclamaciones falsas a compañías aseguradoras. Al dictar esta sentencia —la cual es final y firme, y por lo tanto, tiene una presunción de corrección— el Tribunal Federal contó con una declaración de hechos incontrovertidos, apoyada en prueba documental, que el querellado no pudo refutar.

Por su parte, el querellado admite que las reclamaciones eran falsas, pero sostiene que en aquel momento él no

tuvo conocimiento de dicha falsedad. Sin embargo, aun considerando esa alegación para fines de nuestro análisis, basta con examinar la declaración de hechos incontrovertidos presentada por los demandantes en el caso federal, así como la prueba documental incluida en el expediente, para percatarse de que en varias de las reclamaciones en que el querellado participó como abogado se repetían las mismas personas involucradas en los supuestos accidentes de tránsito.([14])

Según nos parece, tan inusitada coincidencia es suficiente para alarmar la conciencia y generar suspicacia en un abogado promedio. En consecuencia, concluimos que la sentencia del Tribunal Federal y la prueba documental a la que hemos hecho referencia evidencian que el querellado no se esforzó al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión.

Más aún, en autos consta la declaración jurada de 15 de febrero de 2006, en la que el querellado declara lo siguiente:

> Para finales del año 1997, confronto a Rivera Vázquez sobre mi sospecha y éste me admite que Iván Cabrera creaba estos casos lo que significaba que algún fraude se estaba cometiendo. En respuesta de mi señalamiento el Lcdo. Rivera me admite que ese acto de fraude era problema de Iván Cabrera y no de él y mío. A pesar de ello continúe [sic] aceptando los casos referidos por el Lcdo. Rivera.([15])

El querellado alega que prestó esta declaración involuntariamente ante dos agentes federales que se la pidieron para reforzar la acusación contra el licenciado Rivera Vázquez; que declaró bajo la amenaza de que si no cooperaba someterían su participación en los hechos ante la consideración de un Gran Jurado; que no se le permitió tener pre-

---

([14]) Apéndice, págs. 44–67. Ello sin tomar en cuenta las personas que se repetían en las reclamaciones en las que participó el licenciado Rivera Vázquez, quien en ocasiones laboró en conjunto con el querellado.

([15]) Acta de conferencia con antelación a la vista, 18 de octubre de 2013, pág. 2.

sente a un abogado; que no se le permitió ir al baño ni tomar agua por más de dos horas; que la declaración fue hecha en violación a su derecho contra la autoincriminación, y que por lo tanto debe ser excluida.[16]

Con respecto a lo anterior, entre otras consideraciones: primero, según lo determinó la Comisionada Especial, el querellado fue citado y acudió voluntariamente a la reunión con el inspector de correos y el otro agente; segundo, el querellado decidió no guardar silencio ni marcharse del lugar sabiendo, como abogado que es, que tenía derecho a ello; tercero, el querellado no fue arrestado ni citado ante un Gran Jurado antes ni después de prestar la declaración; cuarto, nada en el expediente apunta a indicios que arrojen dudas sobre la validez de la declaración jurada. Por último, aun asumiendo para propósitos de nuestro análisis que el querellado era un sospechoso que se encontraba detenido y ante un interrogatorio en el que no se observaron las garantías contra la autoincriminación, no aplicaría la regla de exclusión para efectos de este procedimiento disciplinario, pues el querellado no está expuesto a condena o procesamiento criminal alguno. E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Sec. 3.3, págs. 120–122.

Tomando en cuenta todo lo anterior, resolvemos que el querellado incurrió en conducta impropia al presentar reclamaciones para indemnización aún luego de conocer que se trataba de casos falsos como parte de un esquema de fraude.[17] Asimismo, el querellado incurrió en una conducta impropia al no denunciar la conducta corrupta y deshonrosa del licenciado Rivera Vázquez, al procurarse reclamaciones fraudulentas y al participar en el esquema de

---

[16] Contestación a querella, págs. 10–13.

[17] Según consta en el expediente, luego del 1997 el querellado instó otras reclamaciones que fueron declaradas fraudulentas. Apéndice, págs. 44–67 y 68–97.

fraude.([18]) Por lo tanto, al aplicar el estándar correspondiente de prueba clara, robusta y convincente, es ineludible concluir que el querellado actuó contrario a las disposiciones del Canon 38 del Código de Ética Profesional, *supra*, y que, por lo tanto, incurrió en una conducta antiética.([19])

## IV

Por los fundamentos expuestos, *se suspende inmediata e indefinidamente al querellado del ejercicio de la abogacía y notaría. Le imponemos el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar de su suspensión a los foros judiciales y administrativos del país. Deberá certificarnos, dentro del término de treinta días contados a partir de la notificación de esta Opinión "per curiam" y Sentencia, el cumplimiento de estos deberes y notificar también de ello a la Procuradora General.*

*La Oficina del Alguacil de este Tribunal procederá a incautar el sello y la obra notarial del querellado, y los entre-*

---

([18]) A diferencia de la Comisionada Especial, quien concluyó que el querellado incurrió en la apariencia de conducta impropia, resolvemos que el querellado, al proceder de la forma como lo hizo, contravino exigencias específicas del Canon 38, *supra*, por lo que incurrió en conducta impropia como tal. "[E]ste Tribunal no está obligado a aceptar la recomendación del informe de la Comisionada Especial, ya que podemos adoptarlo, modificarlo o rechazarlo". *In re Pietri Castellón*, 185 DPR 982, 995 (2012). Véase *In re Hernández Vázquez*, 180 DPR 527 (2010).

([19]) Al determinar la sanción disciplinaria que se impondrá a un abogado por su conducta antiética, pueden tomarse en consideración los factores siguientes: la buena reputación del abogado en la comunidad; su historial disciplinario; si ninguna parte resultó perjudicada por su conducta; la aceptación de la falta y su sincero arrepentimiento; el ánimo de lucro que medió en su actuación; el resarcimiento al cliente, y cualesquiera otras consideraciones, ya atenuantes o agravantes, que resulten pertinentes. *In re Quiñones Ayala*, 165 DPR 138 (2005); *In re Montalvo Guzmán*, 164 DPR 806 (2005). Como atenuantes, el querellado señaló el hecho de no haber tenido otras querellas disciplinarias y, además, expresó arrepentimiento por haberse relacionado con las personas que participaron en el esquema de fraude. También presentó una declaración jurada del Lcdo. Demetrio Fernández con respecto al buen comportamiento ético con el que se desempeñó el querellado en un caso de sucesiones que ambos litigaron. Informe de la Comisionada Especial, pág. 27.

*gará a la Oficina de Inspección de Notarías para su examen e informe a este Tribunal. Notifíquese personalmente esta Opinión "per curiam" al Lcdo. Luis E. Huertas Soto a través de la Oficina del Alguacil de este Tribunal.*

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Pabón Charneco concurrió sin opinión escrita.