Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ASTRID GRISEL SEGUÍ RODRÍGUEZ<br>Recurrida<br><br>v.<br><br>JUAN RAMÓN OTERO MARRERO<br>Peticionario | KLCE202400931 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso núm.: BY2021CV03907<br><br>Sobre: División de la Comunidad de Bienes Gananciales |
| --- | --- | --- |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Salgado Schwarz y el juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de septiembre de 2024.

Comparece el señor Juan Ramón Otero Marrero, en adelante el señor Otero o el peticionario, y solicita que revoquemos la *Resolución* emitida el 10 de julio de 2024 y notificada el día 11 del mismo mes y año, por el Tribunal de Primera Instancia, Sala de Bayamón, en adelante TPI. Mediante la misma, se ordenó la venta y transferencia de determinado bien inmueble perteneciente a la comunidad de bienes post ganancial existente entre las partes.

Por los fundamentos que expondremos a continuación, se expide el recurso de *Certiorari*, se revoca la *Resolución* recurrida y se devuelve al TPI para la continuación de los procedimientos de conformidad con lo aquí dispuesto.

-I-

En el contexto de un pleito de división de una comunidad de bienes post ganancial, la señora Astrid

Grisel Seguí Rodríguez, en adelante la señora Seguí o la recurrida, presentó una *Demanda* contra el peticionario.[1] Como parte de los bienes objeto de división se encuentra una residencia de dos plantas en la Urb. Las Cascadas 1459, Calle Aguas Tibias, Toa Alta, Puerto Rico, valorada en $256,000.00. En lo aquí pertinente, la recurrida arguyó que el señor Otero, "desde la separación hasta el presente, utiliza para su beneficio exclusivo dicho bien inmueble como su residencia, por lo que la parte demandante tiene derecho a un crédito por el uso del inmueble".

Posteriormente, el **18 de mayo de 2023** el TPI celebró una vista transaccional en la que las partes convinieron, entre otros asuntos, que:

> **La parte demandada [peticionario] se comunicará con el Banco y realizará las gestiones pertinentes para eliminar a la parte demandante [recurrida] de la hipoteca. De no eliminarse, la parte demandada releva de responsabilidad a la parte demandante ante cualquier incumplimiento; y de haber algún incumplimiento por la parte demandada, esta responderá de los daños que ocasione a la parte demandante.**[2]

Cónsono con la voluntad de las partes, el **22 de mayo de 2023**, el TPI dictó una *Sentencia*, en la que dispuso lo siguiente:

> Los abogados informaron que las partes alcanzaron un acuerdo y vierten el mismo para record. En vista de lo anterior, el Tribunal aprueba los acuerdos entre las partes y dicta sentencia de conformidad. Se incorporan a esta Sentencia los acuerdos esbozados por las partes en corte abierta, según se desglosan en la minuta del 18 de mayo de 2023.[3]

Luego de que la sentencia adviniera final y firme, la señora Seguí presentó varias mociones en las que alegó que el peticionario incumplió con la sentencia. Por su parte, el señor Otero presentó varios escritos en los

---

[1] Apéndice del peticionario, págs. 5-7.
[2] *Id.*, págs. 8-9. (Énfasis suplido).
[3] *Id.*, pág. 10.

que arguyó que había cumplido con sus obligaciones y que por el contrario, era la señora Seguí quien impedía culminación del acuerdo transaccional.[4]

En dicho contexto procesal, el TPI emitió una *Orden* en la que dispuso: "[n]uevamente la parte demandada incumplió con orden(es) [*sic.*] del Tribunal. **Ha Lugar** a solicitud de parte demandante de "que se le ordene a la parte demandada Juan Ramón Otero Marrero a que venda o transfiera dicha propiedad"... Parte demandante dispone de término de cinco (5) días para presentar proyecto de Orden".[5]

Así las cosas, la señora Seguí cumplió con la orden y acompañó un proyecto de resolución.[6]

Por su parte, el TPI acogió íntegramente el proyecto de resolución y en lo pertinente dispuso:

> [D]eclaramos Ha Lugar la solicitud de la parte demandante a los fines de **"que se le ordene a la parte demandada Juan Ramón Otero Marrero a que venda o transfiera dicha propiedad,** según solicitado en inciso #5 de Moción en Solicitud de Orden presentada el 8 de enero de 2024 (SUMAC #93)".
>
> **Se autoriza a la parte demandante a vender la propiedad localizada en Urb. Las Cascadas 1459 Calle Aguas Tibias Toa Alta, Puerto Rico (en adelante "Propiedad") utilizando los servicios de un corredor de bienes raíces.**[7]

Inconforme, el señor Otero presentó una *Moción de Reconsideración*, en la que adujo que obtuvo la aprobación bancaria para el refinanciamiento del inmueble en controversia, por lo cual solicitó que se dejara sin efecto la orden, ya que "cuenta con una opción menos onerosa, con la que se da cumplimiento inmediato y que concluye esta liquidación de comunidad".[8]

---

[4] *Id.*, págs. 12-28, 31-33 y 38.
[5] *Id.*, pág. 29. (Énfasis en el original).
[6] *Id.*, págs. 34-36.
[7] *Id.*, págs. 1-2. (Énfasis suplido).
[8] *Id.*, págs. 40-41.

Por su parte, el TPI declaró no ha lugar la solicitud de reconsideración.[9]

Aun inconforme, el peticionario presentó un recurso de *Certiorari* en el que alega que el TPI cometió los siguientes errores:

> Erró el TPI ya que carecía de jurisdicción para reabrir el caso y modificar la Sentencia del 22 de mayo de 2023, la cual ya había advenido final y firme.

> Erró el TPI al otorgar un remedio distinto a lo que fue pactado por las partes en caso de incumplimiento en la Sentencia del 22 de mayo de 2023.

> Erró el TPI al no celebrar vista evidenciaria ante las alegaciones de que era la demandante quien entorpecía el proceso ante el Banco.

> Erró el TPI al acoger *ad verbatim* un Proyecto de Resolución que incluye remedios que nunca fueron solicitados por la demandante.

> Erró el TPI al ignorar y no acoger la Moción Informativa Urgente del 22 de julio de 2024 presentada por el demanda[do] y que ponía fin a la controversia.

La recurrida no presentó su alegato en oposición a la expedición del auto en el término que establece el Reglamento del Tribunal de Apelaciones. En consideración a lo anterior, damos el recurso por perfeccionado y, en consecuencia, listo para adjudicación final.

Luego de examinar el escrito del peticionario y los documentos que lo acompañan, estamos en posición de resolver.

**-II-**

**A.**

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[10] Distinto al recurso de

---

[9] *Id.*, págs. 3-4.
[10] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).

apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[11] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[12]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[13]

---

[11] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.
[12] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).
[13] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, una vez este Foro decide expedir el auto de *certiorari*, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los planteamientos en sus méritos.[14] Sobre el particular, el Tribunal Supremo de Puerto Rico, en adelante el TSPR, afirmó:

> Asumir jurisdicción sobre un asunto, expidiendo el auto de *certiorari*, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado.[15]

En fin, al asumir jurisdicción sobre el asunto que tiene ante su consideración mediante la expedición de un auto de *certiorari*, este Tribunal cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida.[16]

**B.**

Los contratos de transacción surgen cuando "mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica".[17] Pueden ser de naturaleza judicial o extrajudicial.[18] En lo aquí pertinente, el contrato de transacción judicial se caracteriza por "pone[r] fin a una acción e incorpora[r] unos acuerdos al proceso judicial en curso".[19] De esta manera, pretenden evitar

---

[14] H. A. Sánchez Martínez, *Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo*, San Juan, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 547.

[15] *Negrón v. Srio. de Justicia*, 154 DPR 79, 92-93 (2001).

[16] *Id.*, pág. 93.

[17] Art. 1497 de la Ley Núm. 55-2020 (31 LPRA sec. 10641).

[18] *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 623 (2009).

[19] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 720 (2022). Véase, además, *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 204 (2006), *Igaravidez v. Ricci*, 147 DPR 1 (1998).

"tesis diferentes respecto a una determinada relación" y a su vez, cualquier controversia, disputa o debate.[20] En tanto surge del mero consentimiento de las partes, el contrato de transacción es bilateral, recíproco, oneroso y consensual.[21]

Para que se consideren perfeccionados, los contratos de transacción deben incluir los siguientes elementos: "(1) una relación jurídica incierta y litigiosa, (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y (3) las recíprocas concesiones de las partes".[22]

Este tipo de contratos se caracteriza porque su perfeccionamiento tiene para las partes el efecto de cosa juzgada.[23] De modo que, "las partes tienen que considerar los puntos discutidos como definitivamente resueltos; no pueden volver nuevamente sobre los mismos".[24]

## c.

En lo aquí pertinente, las sentencias se consideran finales y firmes tan pronto se archivan y notifican. "A partir de ese momento los derechos y las obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección... Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho o al concluir el proceso apelativo".[25] "Es decir, una sentencia es final

---

[20] *Orsini García v. Srio. de Hacienda*, *supra*, pág. 623.
[21] *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 161 (2021).
[22] *Id.*, pág. 156.
[23] *Negrón v. ACT*, 196 DPR 489, 510 (2016).
[24] *Id.*
[25] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6.ª ed., San Juan, LexisNexis, 2017, pág. 423. Véase, además, *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 156 (2011); *In re: Huertas Soto*, 195 DPR 234, 241 (2016); *Vargas v. González*, 149 DPR 859 (1999).

y definitiva 'cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia'".[26]

Una vez se emiten, las sentencias finales y firmes constituyen la ley del caso. "Según esta doctrina, generalmente las determinaciones y asuntos decididos y considerados por un tribunal, en particular por un foro apelativo, obligan tanto a un tribunal inferior como al que las dictó e impiden que puedan ser reexaminados".[27] Proceder de forma contraria, desvirtúa el objetivo cardinal en nuestro sistema judicial de "velar por el trámite ordenado y pronto de los litigios, al igual que promover la estabilidad y certeza del derecho".[28]

-III-

A los efectos del resultado alcanzado basta discutir el primer señalamiento de error.

Para el peticionario, el convenio entre las partes, adoptado por el TPI y que constituye sentencia final y firme, consiste en que el señor Otero realizaría gestiones "para eliminar" a la señora Seguí de la hipoteca. De resultar estas infructuosas, el peticionario relevaría de responsabilidad a la recurrida "ante cualquier incumplimiento y de haber un incumplimiento", el señor Otero respondería por los daños que ello ocasionara a la recurrida. La disposición sobre la venta del inmueble post ganancial equivale a reabrir a reabrir el caso y a modificar la sentencia,

---

[26] *SLG Szendrey-Ramos v. Consejo de Titulares, supra.*
[27] *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012).
[28] *Rosso Descartes v. BGF, supra,* págs. 192-193.

facultades de las que carece el TPI una vez la sentencia ha advenido final y firme. Tiene razón. Veamos.

El **18 de mayo de 2023** las partes suscribieron un contrato de transacción judicial, mediante el cual el señor Otero se comprometió a liberar a la recurrida de cualquier responsabilidad por el gravamen hipotecario que afecta al inmueble residencial, que forma parte de la comunidad post ganancial objeto de división. En su defecto, el peticionario relevaría de responsabilidad a la señora Seguí, codeudora hipotecaria, y la indemnizaría por los daños resultantes de haber permanecido como parte en la obligación garantizada hipotecariamente.

Sin embargo, la propuesta de la recurrida de vender el inmueble, presentada el **10 de julio de 2024 y acogida por el TPI en la misma fecha**, es un negocio jurídico completamente distinto al otorgado por las partes más de un año atrás. La recurrida no podía promoverlo porque la transacción de **18 de mayo de 2023** "era un asunto definitivamente resuelto" "sobre el cual no podía volver". Tampoco el foro recurrido podía acogerlo, porque la sentencia de **22 de mayo de 2023** era final y firme y por ende, carecía de jurisdicción para modificar el dictamen.

### -IV-

Por los fundamentos previamente expuestos, se expide el recurso de *Certiorari*, se revoca la *Resolución* recurrida y se devuelve al Tribunal de Primera Instancia para la continuidad de los procedimientos de conformidad con lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

                    Lcda. Lilia M. Oquendo Solís
              Secretaria del Tribunal de Apelaciones